# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-CA-01857-SCT

*IRENE CAVES, STATUTORY REPRESENTATIVE*
*OF THE WRONGFUL DEATH BENEFICIARIES*
*OF JIMMY CAVES*

*v.*

*BENJAMIN YARBROUGH, M.D., AND*
*FRANKLIN COUNTY MEMORIAL HOSPITAL*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 10/13/2006 |
| TRIAL JUDGE: | HON. FORREST A. JOHNSON, JR. |
| COURT FROM WHICH APPEALED: | FRANKLIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOEL W. HOWELL, III |
| ATTORNEYS FOR APPELLEES: | JAMES SCOTT ROGERS |
| | WADE G. MANOR |
| | LANE B. REED |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | REVERSED AND REMANDED - 09/25/2008 |
| MOTION FOR REHEARING FILED: | 12/06/2007 |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.   The appellant's motion for rehearing is granted. The previous opinions are withdrawn and these opinions are substituted therefor.

¶2.   This is a medical-negligence lawsuit filed pursuant to the Mississippi Tort Claims Act ("MTCA"),[1] which requires that suits be filed within one year "next after the date of the

---

[1] Miss. Code Ann. §§ 11-46-1 to 11-46-23 (Rev. 2002).

tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based." The question presented is whether the plaintiff's claims are time-barred.

¶3. We hold today that: (1) the statute of limitations for claims filed under the MTCA begins to run when all of the elements of a tort exist, that is, when some damage to the plaintiff proximately results from the defendant's negligence; and (2) the doctrine of *stare decisis* requires us to recognize a discovery rule for MTCA claims, that is, that the statute of limitations shall not begin to run until the plaintiff knows – or by exercise of reasonable diligence, should know – that a cause of action exists. We reverse the trial court's grant of summary judgment and remand for a hearing on this question of whether, within a year of providing notice to the defendants, the claimants knew or, by exercise of reasonable diligence, should have known of both Mr. Caves's injury and the alleged tortious act or omission which proximately caused it.

## BACKGROUND FACTS AND PROCEEDINGS

¶4. On April 15, 2000, 51-year-old Jimmy Caves began experiencing abdominal pain. The next day, Caves's condition worsened, and he suffered episodes of vomiting and diarrhea. He was admitted to the emergency room at Franklin County Memorial Hospital (the "Hospital"), where he was evaluated by Dr. Benjamin Yarborough, who, after administering intravenous fluids and medication, ordered lab work and an abdominal x-ray.

¶5. Mr. Caves's condition continued to deteriorate and, in the early morning hours of April 17, Dr. Yarbrough ordered more lab work and another abdominal x-ray. After consulting another physician over the phone, Dr. Yarbrough decided to transfer Mr. Caves,

2

but, before he could do so, Mr. Caves's heart stopped. He was resuscitated, only to have his heart stop again a little more than an hour later. He was pronounced dead at 3:35 a.m.

¶6. Mr. Caves's wife, Irene,[2] was present at the hospital when he was admitted, and she remained there until his death. In an effort to learn the cause of her husband's death, Mrs. Caves agreed to an autopsy, which was performed that night. The next day, the coroner informed Mrs. Caves that the cause of death was a "septic colon," which was later recorded as the cause of death on Mr. Caves's death certificate.

¶7. On April 21, 2000, Mrs. Caves requested and obtained the medical records pertaining to her husband's death. According to her testimony, when she attempted to obtain a copy of the autopsy report from the pathologist's office, Mrs. Caves was told there would be a delay due to the death of the doctor who had performed the autopsy. She continued to request the report on a weekly basis until September 2000, when she moved out of state and turned the pursuit of the autopsy report over to her son, Kevin, who continued to request the report. Although the autopsy report was completed on September 28, 2000, Mrs. Caves asserts that she did not receive it until March of 2001.

¶8. Prior to receiving the autopsy report, Mrs. Caves contacted an attorney, because she suspected wrongdoing on the part of the Hospital and Dr. Yarbrough. Based on the information available at the time (which did not include the autopsy report), the attorney declined to take Mrs. Caves's case. She then contacted another attorney, who took her case

_____

[2] At the time of her husband's death, Mrs. Caves had been a licensed practical nurse for almost twelve years.

3

and retained Dr. Gary Pfortmiller, a full-time emergency-room physician, to review the case. After reviewing the medical records and the autopsy report,[3] Dr. Pfortmiller provided an affidavit dated April 11, 2001, which stated that Mr. Caves's death was "caused by or contributed to by care far below the minimal standard."

¶9.     On February 13, 2002, Mrs. Caves provided the Hospital notice of a claim under the MTCA.  On April 12, 2002, Mrs. Caves followed up the notice with a lawsuit against the Hospital and Dr. Yarbrough.[4]  The Defendants responded with an answer and a motion for summary judgment, asserting that Mrs. Caves's claims were time-barred because she failed to bring them within the MTCA's one-year statute of limitations.  Mrs. Caves responded by arguing that she had provided notice and had filed her claim within one year of her discovery of her claim.[5]

---

[3]The autopsy report stated: "Based on the findings of this case, I believe the cause of death in this patient is sepsis secondary to bowel perforation, apparently secondary to an infarcted colon. There are also findings of bronchopneumonia and acute splenitis, all of which would be consistent with systemic sepsis."

[4]Dr. Yarborough appears to have been sued in his individual capacity;  he was not included in the notice to the Hospital, and we find no evidence in the record that he received a separate notice. We are not told whether Dr. Yarborough has claimed the immunity granted by Section 11-46-7(2), nor do the parties raise or discuss Mrs. Caves's failure to provide any notice to Dr. Yarbrough as an independent basis for his dismissal.  We shall therefore not address it.

[5]For certain causes of action, the statute of limitations does not begin to run until the claimant discovers, or reasonably should discover, the injury, negligence, or some other feature of the claim. *See e.g.* Miss. Code Ann. §§ 15-1-36 (Rev. 2002) (requires discovery of the act, omission or neglect); 15-1-49(2) (requires discovery of the injury).  This requirement of a discovery is commonly known as a "discovery rule." The MTCA includes no discovery rule within its language.

4

¶10. The trial court granted summary judgment, holding that the discovery rule did not apply because Mr. Caves's injuries were not latent.[6] Mrs. Caves timely appealed. While both parties raised and briefed the issue of whether a discovery rule should be applied to the facts of this case, neither party addressed the general application by this Court of a discovery rule to the MTCA.

¶11. We handed down our original decision, holding that – because the MTCA has within its provisions no discovery rule – Mrs. Caves's claims were time-barred, and any prior judicial findings of such a rule for claims under the MTCA were erroneous and overruled. Mrs. Caves filed a motion for rehearing, arguing primarily that this Court – having previously recognized a discovery rule for claims under the MTCA – should continue to apply a discovery rule on the basis of *stare decisis*.

¶12. Without dissent, we granted the motion for rehearing to examine the question. We ordered the parties (and invited amici) to submit supplemental briefs addressing, among others, the *stare decisis* question, and we took the rare step of setting oral argument on the motion for rehearing.

¶13. Now, after careful review of the record, the excellent briefs submitted by the parties and amici, and the excellent arguments presented by counsel, we are persuaded that, although the MTCA includes no discovery rule, we are nevertheless bound by the doctrine of *stare*

---

[6]The trial judge, having no statutory language for guidance, apparently believed that, under the judicially-created discovery rule applicable to the MTCA (discussed later), the statute of limitations began to run upon discovery of the injury, rather than the negligence.

*decisis* to apply a discovery rule to cases filed pursuant to the MTCA. We therefore withdraw our original opinion and substitute this opinion as the opinion of the Court.

## ANALYSIS

¶14. A trial court "shall" grant summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c).

¶15. When reviewing an appeal of a trial court's grant of summary judgment, we apply "a *de novo* standard of review." ***Moss v. Batesville Casket Co.***, 935 So. 2d 393, 398 (Miss. 2006). Furthermore, "the application of a statute of limitations is a question of law," which we review de novo. ***Sarris v. Smith***, 782 So. 2d 721, 723 (Miss. 2001).

¶16. The facts necessary to our disposition of this case are essentially undisputed. Instead, we are presented with significant unsettled legal issues related to application of the MTCA's statute of limitations. We must consider when, under the MTCA, the limitation period begins to run, whether it is subject to a discovery rule and, if so, what must be discovered to begin the limitation period. Upon settling these questions, we must then determine whether, under the facts of this case, the trial court's grant of summary judgment must be reversed.

## I.
### When did the statute of limitations begin to run?

¶17. Because this is a wrongful-death case filed pursuant to the MTCA, we shall analyze the statute of limitations that applies to both MTCA and wrongful-death cases.

6

*The statute of limitations in MTCA cases.*

¶18.    There is no dispute that, because both defendants fall within the definition of a political subdivision of the state, this case is governed by the provisions of the MTCA. Thus, we begin our analysis by setting forth the relevant statutory language:

> (3)  All actions brought under the provisions of this chapter shall be commenced within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based, and not after . . . .
>
> (4)  [I]f any person entitled to bring any action under this chapter shall, at the time at which the cause of action accrued, be under the disability of infancy or unsoundness of mind, he may bring the action within the time allowed in this section after his disability shall be removed. . . .

Miss. Code Ann. § 11-46-11 (Rev. 2002).

¶19.    The statute's language describes the beginning of the limitation period as the "date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based." *Id*. The three terms, "tortious, wrongful, and otherwise actionable" are particularly troublesome because they are not synonymous.

¶20.    Focusing only on the date of the "wrongful" conduct leads to the inescapable conclusion that the limitation period begins on the date of the acts which led to the lawsuit. Thus, we would look only to the date of Dr. Yarbrough's alleged negligent act, ignoring for purposes of the analysis the date of any resulting injuries or damages. But both Mrs. Caves and amici have argued that we must also consider the meaning of "tortious" and "actionable."

¶21.    A tort is a "civil wrong, other than breach of contract, for which a remedy may be obtained, usually in the form of damages." Black's Law Dictionary, 1247 (8th ed. 2004).

7

In order to mature into a tort, the negligent act must proximately produce recoverable damages. *Methodist Hosp. of Miss. Annual Conference v. Gammel*, 172 So. 2d 762 (Miss. 1965). Thus, focusing on "tortious" and "actionable" requires that we look past the date of the wrongful conduct to the earliest date all of the necessary elements of a tort claim were present, remembering that damages may not manifest until long after the wrongful conduct. For instance, a doctor might apply thirty stitches where thirty-five are called for under the appropriate standard of care. Thus, the doctor's conduct would be "wrongful" in that it fell short of the appropriate standard of care. But absent any damage or harm proximately caused by the breach, there is no tort and the breach is not "actionable."

¶22.    Because the three terms listed in the statute are ambiguous, we must look for clues to the intended meaning and most reasonable application. We are assisted in our effort by the language included in the statute's next subsection, which specifically references "the time at which the cause of action accrued." Miss. Code Ann. § 11-46-11(4) (Rev. 2002). Although this subsection has no direct application to today's case, it is helpful in illuminating the intent of the statute in its entirety. Subsection four's employment of the "cause of action accrued" language is more consistent with an interpretation of subsection three, which holds that the limitation period begins on the earliest date all of the elements of a tort are present. We therefore hold that, in applying the statutory language of the MTCA, the statute of limitations for claims thereunder begins to run when all the elements of a tort, or cause of action, are present.

8

¶23.    In applying this interpretation to today's case, and (for summary judgment purposes) giving the plaintiff the benefit of every reasonable doubt, we note that all of the elements of all claims were present, at least by April 17, 2000, when Mr. Caves died.[7]  Since notice was not provided until February 13, 2002, the suit was time-barred, unless application of a discovery rule delayed the beginning of the running of the limitations period until at least February 13, 2001.

*The statute of limitations in wrongful-death cases.*

¶24.    We previously addressed the statute of limitations in wrongful-death cases in ***Jenkins v. Pensacola Health Trust***, 933 So. 2d 923 (Miss. 2006) wherein we stated:

> Recognizing that, in ***Thiroux***, we should have specifically overruled ***Gentry***, we do so now, and hold that the statute of limitations on bringing a wrongful death claim is subject to, and limited by, the statute of limitations associated with the claims of specific wrongful acts which allegedly led to the wrongful death.

*Id*. at 926.  It has been argued that our holding in ***Jenkins*** produced unfair results because (according to the argument), a wrongful-death claim may expire before death occurs.  This argument is incorrect, and reveals a failure to review and absorb the specific provisions of the wrongful death statute.

¶25.    The wrongful-death statute – as it relates to death caused by a negligent act – states in very specific and understandable terms:

---

[7]All of the elements of some of the claims may have been present sooner, depending upon when the claimants first suffered recoverable damage from the alleged negligence of Dr. Yarbrough.

9

> Whenever the death of any person or of any unborn quick child shall be caused by any . . . **negligent act** or omission, . . . as would, **if death had not ensued, have entitled the party injured or damaged thereby to maintain an action** and recover damages in respect thereof, . . . and such deceased person shall have left [wrongful death beneficiaries] . . . , the [defendant] . . . that would have been liable **if death had not ensued** . . . shall be liable for damages, notwithstanding the death . . . .

Miss. Code Ann. § 11-7-13 (Rev. 2004). Thus, the survival claims described in the wrongful-death statute are, by specific statutory language, limited to damages which the deceased person could have pursued "if death had not ensued." In other words, when a tortfeasor negligently injures someone and a claim arises, the injured party generally has three years to bring a claim. Miss. Code. Ann. § 15-1-49 (Rev. 2003). And if the injured party subsequently dies, the wrongful-death beneficiaries simply step into the shoes of the deceased person and may – assuming the deceased person brought no claim prior to death – bring claims the deceased person could have brought "if death had not ensued." The injured person (who later died), the statutory beneficiaries, or a combination of the two, have had the entire limitation period to bring the suit, and the claim (made by the statutory beneficiaries) is no more than the same claim the injured party could have brought "if death had not ensued." Stated another way, if a person who is injured through the negligence of a tortfeasor fails to file suit within the three-year statute of limitations, the right to bring the claim expires; and it does not quicken simply because the injured person later dies.

¶26. But cases filed pursuant to our wrongful-death statute may involve more than one kind of claim. For instance, in addition to claims the decedent could have brought "if death had

10

not ensued,"[8] there may be individual claims of loss of consortium, society and companionship, estate claims, and insurance subrogation claims. While it is true that the wrongful-death statute requires that all such claims be brought in one suit, each claim is subject to its own statute of limitations. The statute of limitations on estate claims does not begin to run until all of the elements of an estate claim are present. The same is true for claims of loss of society and companionship, which may very well not arise until death.

¶27. One reason for the confusion over claims under our wrongful-death statute is that much of the statute's language does not relate to wrongful-death claims, but rather survival claims.[9] One who brings a claim under the wrongful-death statute to recover only damages under circumstances which, "if death had not ensued, have entitled the party injured or damaged thereby to maintain an action and recover damages in respect thereof," is actually bringing a survival claim, rather than a wrongful-death claim. A true wrongful-death claim – which is allowed, but not specifically discussed in the language of the wrongful-death

---

[8]These claims (which the decedent could have brought "if death had not ensued," may be recovered only by the wrongful-death beneficiaries, who share equally all such damages. Miss. Code Ann. § 11-7-13 (Rev. 2004).

[9]The survival action provided in the wrongful death statute is an extension of Mississippi's survival statute, which allows personal actions of a decedent to be pursued after his or her death. It provides as follows:

> Executors, administrators, and temporary administrators may commence and prosecute any personal action whatever, at law or in equity, which the testator or intestate might have commenced and prosecuted. They shall also be liable to be sued in any court in any personal action which might have been maintained against the deceased.

Miss. Code Ann. § 91-7-233 (Rev. 2004).

statute – is one which is brought to recover damages (such as loss of consortium) one person's death causes to another.

¶28. The Louisiana wrongful-death statute, Louisiana Revised Statute Section 9:5628 (2008), also provides for survival and wrongful-death claims. The Louisiana Supreme Court addressed the confusion caused thereby as follows:

> Although both actions arise from a common tort, survival and wrongful death actions are separate and distinct. **Guidry v. Theriot**, 377 So. 2d 319 (La. 1979). Each right arises at a different time and addresses itself to the recovery of damages for totally different injuries and losses. **Id**. The survival action comes into existence simultaneously with the existence of the tort and is transmitted to beneficiaries upon the victim's death and permits recovery only for the damages suffered by the victim from the time of injury to the moment of death.[10] **Id**. It is in the nature of a succession right. Comment, *Wrongful Death: Prescription? Peremption? Confusion!* 39 La. L.Rev. 1239, 1249 (1979). On the other hand, the wrongful death action does not arise until the victim dies and it compensates the beneficiaries for their own injuries which they suffer from the moment of the victim's death and thereafter. **Guidry v. Theriot**, *supra*. Wrongful death damages compensate beneficiaries for their own injuries. 39 La.L.Rev. 1239, *supra* at 1249.

**Taylor v. Giddens**, 618 So. 2d 834, 840 (La. 1993).

¶29. To summarize, the Mississippi wrongful-death statute, despite the Legislature's assigned nomenclature, encompasses all claims – including survival claims which could have been brought by the decedent, wrongful-death claims, estate claims, and other claims – resulting from a tort which proximately caused a death. And where death is not an

---

[10]The Mississippi wrongful-death statute does not limit recoverable damages to those suffered prior to death. For instance, by using life expectancy data, the wrongful-death beneficiaries may – in appropriate cases – recover the lost wages the decedent suffered both prior to, and after, death.

immediate result of the tort, the limitation periods for the various kinds of claims may not begin to run at the same time.

¶30.   In the case before us today, the wrongful-death claims of the wrongful-death beneficiaries matured – and the statute of limitations on those claims began to run – on April 17, 2000; not because that is the day Mr. Caves died, but rather because that is the first day ("if death had not ensued") Mr. Caves could have brought a claim.[11]

¶31.   If there are other claims against Dr. Yarbrough and the Hospital (such as estate claims and claims for loss of consortium) which may be subject to a different statute of limitations, such claims are not before us.  We now turn to the question of whether the claims of the wrongful-death beneficiaries are subject to a discovery rule.

## II.

### Is the MTCA subject to a discovery rule?

¶32.   The MTCA includes within its provisions and language no discovery rule which tolls or delays the beginning of the running of the statute of limitations until the claimant discovers the injury or the claim.  Because it is this Court's duty to apply the law as written, not as we think it should have been written, we concluded in our original opinion in this case that the absence of any discovery rule within the provisions of the MTCA was binding on this Court.  On rehearing, both Mrs. Caves and amici forcefully argue that, even though the

---

[11]This, of course, assumes that the running of the statute of limitations is not tolled pursuant to an applicable discovery rule.

13

MTCA has no discovery provision, previous decisions of this Court have held otherwise,[12] and the doctrine of *stare decisis* requires us to follow those prior decisions, whether or not this Court now agrees with them.

¶33.     Black's Law Dictionary defines *stare decisis* as the "doctrine of precedent, under which it is necessary for a court to follow earlier judicial decisions when the same points arise again in litigation."  Black's Law Dictionary, 1173 (8th ed. 2004).  The doctrine's simple definition belies its inconsistent application in the various state and federal jurisdictions.  There are certainly instances where incorrect statutory interpretation should be corrected.  For instance, in ***Monell v. Department of Social Services***., 436 U.S. 658, 695, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), the Court stated:  "Nor is this a case where we should 'place on the shoulders of Congress the burden of the Court's own error.'" (quoting ***Girouard v. United States***, 328 U.S. 61, 70, 66 S. Ct. 826, 90 L Ed. 1084 (1946)).  Nevertheless, *stare decisis* is a recognized doctrine which is followed, to some degree, by virtually every American appellate court.

*Stare decisis - United States Supreme Court precedent.*

¶34.     Perhaps the most recognizable pronouncement regarding *stare decisis* was uttered by Justice Louis Brandeis, who stated in dissent:  "In most matters it is more important that the applicable rule of law be settled than that it be settled right."  ***Burnet v. Coronado Oil & Gas***

---

[12]We note that, in his dissent to our previous opinion, Justice Graves correctly cited this Court's previous authority which formed the basis of Mrs. Caves's and amici's argument, and which today leads us to the conclusion that, pursuant to the doctrine of *stare decisis*, we must continue to apply a discovery rule to claims filed under the MTCA.

*Co.*, 285 U.S. 393, 405, 52 S. Ct. 443, 76 L. Ed. 815 (1932) (Brandeis, J., dissenting). Justice Brandeis's view was doggedly followed in numerous cases decided by the United States Supreme Court during the first half of the Twentieth Century. *See e.g. James v. United States*, 366 U.S. 213, 230-35, 81 S. Ct. 1052, 6 L. Ed. 2d 246 (1961); *Toolson v. New York Yankees*, Inc., 346 U.S. 356, 357, 74 S. Ct. 78, 98 L. Ed. 64 (1953) (per curiam) (court viewed silence as legislative acquiescence to precedent). *United States v. South Buffalo Ry.*, 333 U.S. 771, 68 S. Ct. 868, 92 L. Ed. 1077 (1948); *Cleveland v. United States*, 329 U.S. 14, 18, 67 S. Ct. 13, 91 L. Ed. 12 (1946); (Black, J., concurring in part and dissenting in part) (arguing in support of reaffirming *Commissioner v. Wilcox*, 327 U.S. 404, 66 S. Ct. 546, 90 L. Ed. 752 (1946), which held embezzled money was not taxable income, since Congress chose not to enact contrary legislation in following fifteen years); *Screws v. United States*, 325 U.S. 91, 109-13, 65 S. Ct. 1031, 89 L. Ed. 1495 (1945); *Helvering v. Griffiths*, 318 U.S. 371, 63 S. Ct. 636, 87 L. Ed. 843 (1943).

¶35.     However, there are also numerous cases in which the Supreme Court in majority, and certain justices in dissent, have refused to view silence alone as congressional approval of the Court's statutory interpretation. *See e.g. Toucey v. New York Life Ins. Co.*, 314 U.S. 118, 140-41, 62 S. Ct. 139, 86 L. Ed. 100 (1941) (congressional silence should not be treated as acceptance of ill-reasoned precedents); *Boys Markets, Inc. v. Retail Clerk's Union*, 398 U.S. 235, 90 S. Ct. 1583, 26 L. Ed. 2d 199 (1970) ("Nor can we agree that conclusive weight should be accorded to the failure of Congress to respond to *Sinclair Refining Co. v.*

15

*Atkinson,* 370 U.S. 195, 82 S. Ct. 1328, 8 L. Ed. 2d 440 (1962) [a case wrongly decided] on the theory that congressional silence should be interpreted as acceptance of the decision."); *Monroe v. Pape*, 365 U.S. 167, 202, 220-23, 81 S. Ct. 473, 5 L. Ed. 2d 492 (1961) (Frankfurter, J., dissenting) ("The relevant demands of *stare decisis* do not preclude considering for the first time thoroughly and in the light of the best available evidence of congressional purpose, a statutory interpretation which started as an unexamined assumption on the basis of inapplicable citations and has the claim of a dogma solely through reiteration."); *Holder v. Hall,* 512 U.S. 874, 944-45, 114 S. Ct. 2581, 129 L. Ed. 2d 687 (1994) ("But 'we have never applied *stare decisis* mechanically to prohibit overruling our earlier decisions determining the meaning of statutes.'") (quoting *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 695, 98 S. Ct. 2018, 56 L. Ed. 2d 611(1978)).

*Stare Decisis – Mississippi Precedent.*

¶36.    The doctrine of *stare decisis* is not new to this Court, which in 1914 held that "[a] former decision of this court should not be departed from, unless the rule therein announced is not only manifestly wrong, but mischievous." *Forest Prod. & Mfg. Co. v. Buckley*, 107 Miss. 879, 899, 66 So. 279 (1914).  Almost eighty years later, this Court stated:

> In *stare decisis* generally, we look for error, but, finding that, we look for more and we look largely in the area of public or widespread disadvantage. Ordinarily, we do not overrule erroneous precedent unless it is "pernicious," *Stone v. Reichman-Crosby Co.*, 43 So. 2d 184, 190 (Miss. 1949); "impractical," *Robinson v. State*, 434 So. 2d 206, 210 (Miss. 1983) (Hawkins, J., concurring); or is "mischievous in its effect, and resulting in detriment to the public." *Childress v. State*, 188 Miss. 573, 577, 195 So. 583, 584 (1940).

16

We look for "evils attendant upon a continuation of the old rule." ***Tideway Oil Programs, Inc. v. Serio***, 431 So. 2d 454, 467 (Miss. 1983).

***State ex rel. Moore v. Molpus***, 578 So. 2d 624, 635 (Miss. 1991).

¶37.    There is no shortage of cases in which this Court has followed the doctrine of *stare decisis*. For instance, as recently as 2003, this Court stated:

> ***State ex rel. Moore v. Molpus***, 578 So. 2d 624, 635 (Miss.1991), requires this Court to find that the law as it stands is pernicious, impractical, or mischievous in its effect and resulted in a detriment to the public in order to modify the law.[13]

***Smith v. State***, 839 So. 2d 489, 495 (Miss. 2003). *See also* ***Land Comm'r v. Hutton***, 307 So. 2d 415, 421 (Miss. 1974) ("Unless mischievous, resulting in detriment to the public, [precedent] will not be overruled although we are of the opinion that it was wrongfully decided"); ***Crosby v. Alton Ochsner Med. Found.***, 276 So. 2d 661, 671 (Miss. 1973) ("a decision of this Court is binding in its effect and unless mischievous resulting in detriment to the public, it will not be overruled although wrongly decided"); ***Westmoreland v. State***, 246 So. 2d 487, 497 (Miss. 1971) ("This Court follows the doctrine of *stare decisis* and under this doctrine we follow our former decisions, unless such decisions are manifestly wrong and mischievous in their results"); ***New York Life Ins. Co. v. Nessossis***, 189 Miss. 414, 423 (Miss. 1940) ("[I]t is the settled rule that prior decisions will not be overruled unless manifestly and undoubtedly wrong, and mischievous in operation and effect"); ***Childress v.***

---

[13]The defendant was arguing that the Court should modify the law. ***Smith,*** 839 So. 2d at 495. The Court stated the requirement for overruling the existing law as promulgated in ***Molpus***, and found that the defendant had failed to show that the existing law met the ***Molpus*** test. ***Id.***

17

***State***, 188 Miss. 573, 577 (Miss. 1940) ("Unless mischievous in its effect, and resulting in detriment to the public, a case will not be overruled although wrongly decided").

¶38.    Thus, our precedent applying *stare decisis* may be summed up as follows: Even though this Court's previous interpretation of a statute was (in the current Court's view) erroneous, we must continue to apply the incorrect interpretation unless we consider it "pernicious," "impractical," or "mischievous in . . . effect, and resulting in detriment to the public." ***Id***.

¶39.    Unfortunately, having stated what must be found to prevent application of *stare decisis*, this Court has offered no guidelines for finding or identifying these prerequisites (pernicious, impractical, mischievous, etc.).  A justice on this Court might reasonably conclude that some of the definitions of mischievous [14] or pernicious[15] apply to all of this Court's prior opinions with which that justice disagrees.

¶40.    Worse still is the fact that this Court has never handed down an opinion which reversed a prior statutory interpretation because it was found to be impractical or pernicious, and has rarely found a prior interpretation to be mischievous.[16]    Since the

[14]Dictionary definitions of  "mischievous," including  "playful," and "troublesome." *American Heritage Dictionary ® of the English Language* (4th Ed. 2004) http://dictionary.reference.com/browse/mischievous (Aug 23, 2008)

[15]Included in the dictionary definitions for "pernicious" is "that which annoys or gives trouble and vexation, that which is offensive or noxious." *Webster's Revised Unabridged Dictionary* http://dictionary.reference.com/browse/pernicious (August 23, 2008).

[16]We must hark back to 1910, when this Court held that technical compliance with a land-sale statute was insufficient, when accompanied by fraud; and that a previous case holding otherwise

18

"pernicious/mischievous" test has virtually never been met, one would think this Court has virtually never reversed a prior statutory interpretation. Not so. Without any finding of "pernicious" or "mischievous," this Court has not hesitated to reverse numerous prior cases which wrongly interpreted a statutory provision. *See e.g., Cash Distrib. Co. v. Neely*, 947 So. 2d 286 (Miss. 2007) (overruled previous statutory interpretation of ADEA in *Columbus Paper & Chemical, Inc. v.Chamberlin,* 687 So. 2d 1143 (Miss. 1996); *C.L. Thornhill, et al. v. System Fuels, Inc., et al.*, 523 So. 2d 983, 1011 (Miss. 1988) (Robertson, J., concurring) ("The history of our law is strewn with the carcasses of cases long defended in the name of stare decisis ultimately reversed by the rule of reason."). *Harper v. Harper*, 491 So. 2d 189, 202 (Miss. 1986) (overruled *Brickell v. Lightcap* 115 Miss. 417, 76 So. 489 (1917) and progeny that espoused a different statutory interpretation).

¶41. Thus, the need for a clear, consistent rule is apparent. The bench and bar should not be left to guess when, and upon what basis, this Court might decide to reverse prior interpretations of statutes. Although we cannot agree with Justice Brandeis that "it is more important that the applicable rule of law be settled than it be settled right," we do think there comes a point when the Legislature may incorporate an incorrect interpretation of a statute.

¶42. While we do not agree that the Legislature's mere silence is enough, we do agree with the view offered by Justice Roberts in *Helvering v. Hallock*, 309 U.S. 106, 130-32, 60 S. Ct.

---

was "manifestly unsound and mischievous in its effect." *Wisconsin Lumber Co. v. State*, 54 So. 247, 249 (Miss. 1910). The other instance appears in 1968, when this Court, overruling prior precedents, held that the interpretation of the apportionment statute was "manifestly erroneous" and "mischievous in operation." *Cockrell Banana Co. v. Harris*, 212 So. 2d 581, 585 (Miss. 1968).

444, 84 L. Ed. 604 (1940), that congressional re-enactment of a statute creates a presumption of legislative approval of the Court's prior interpretations of that statute. This threshold test for application of *stare decisis* has been followed in numerous cases. For instance, in *Lorillard, Div. of Loew's Theatres, Inc. v. Pons*, 434 U.S. 575, 580-81, 98 S. Ct. 866, 55 L. Ed. 2d 40 (1978), Justice Marshall noted, "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change."

¶43.    We agree with this reasoning,[17] and hold that – in cases where this Court concludes a statute was incorrectly interpreted in a previous case – we will nevertheless continue to apply the previous interpretation, pursuant to the doctrine of *stare decisis*, upon finding the Legislature amended or reenacted the statute without correcting the prior interpretation. In our view, such action on the part of the Legislature amounts to incorporation of our previous interpretation into the reenacted or amended statute. The Legislature is, of course, free to preclude our incorrect interpretation by specific provision, failing which, we must conclude that the legislative silence amounts to acquiescence. Stated another way, the incorrect interpretation becomes a correct interpretation because of the Legislature's tacit adoption of the prior interpretation into the amended or reenacted statute. We must now determine

---

[17]This reasoning is not perfect, as applied to Mississippi statutes. Unlike the United States Supreme Court's review of statutes enacted by the Congress, this Court – when reviewing its prior statutory interpretation – has no legislative history for guidance on the question of whether, in re-enacting a statute, the Legislature took into account our prior interpretation. *See United States v. Bd. of Comm'rs*, 435 U.S. 110, 134-35, 98 S. Ct. 965, 55 L. Ed. 2d 148 (1978) (legislative history of statutory reenactment showed Congress agreed with Court's prior interpretation).

20

whether the doctrine of *stare decisis*, as defined today, applies to this Court's previous interpretations of the MTCA.

*Barnes v. Singing River Hospital.*

¶44. Nine years ago, without citation of any authority to do so, this Court "incorporated" a discovery rule into the MTCA, stating simply that

> we choose to incorporate a discovery rule in actions brought under the [MTCA] involving latent injuries. Particularly considering the short, one-year statute of limitations period in § 11-46-11(3), we find that justice is best served by applying a discovery standard to such cases.

***Barnes v. Singing River Hosp.***, 733 So. 2d 199, 205 (Miss. 1999).

¶45. Following ***Barnes***, this Court continued to apply its judicially-created discovery rule to claims filed under the MTCA. *See **Wayne Gen. Hosp. v. Hayes***, 868 So. 2d 997, 1000–1001 (Miss. 2004) ("[t]he discovery rule applies to the one-year MTCA statute of limitations"); ***Wright v. Quesnel***, 876 So. 2d 362, 366 (Miss. 2004) (MTCA's statute of limitations is "subject to a discovery rule"); ***Moore v. Mem'l Hosp.***, 825 So. 2d 658, 667 (Miss. 2002) ("[w]e have held that the discovery rule applies to the MTCA's statute of limitations"); ***Henderson v. Un-Named Emergency Room***, 758 So. 2d 422, 427 (Miss. 2000) ("this Court incorporated a discovery rule in actions brought under the Mississippi Tort Claims Act").

¶46. Although the MTCA's discovery rule was judicially created, Mrs. Caves argues in her brief that, subsequent to this Court's incorrect interpretation in ***Barnes***, Section 11-46-11(3)

21

has been brought forward in legislation and re-enacted by the legislature at least three times. . . . In accord with familiar rules of construction, the legislature by re-enactment of a statute which has been construed by the highest court of the state, adopts the construction placed upon the statute by the Court.

¶47. We agree, and hold today that by reenacting Section 11-46-11(3) without addressing or countermanding this Court's decision in *Barnes*, the Legislature acquiesced and tacitly approved and incorporated into the statute a discovery rule as announced in *Barnes*. Pursuant to the doctrine of *stare decisis*, we therefore shall continue to recognize a discovery rule with respect to Section 11-46-11(3). Having held that a discovery rule applies to claims under the MTCA, we must now proceed to discuss its effect on the case before us today.

### III.
### What must be discovered?

¶48. Not all discovery rules are created equal. In analyzing what the plaintiff must discover in order to trigger the running of the statute of limitations, we ordinarily are guided by the wording of a statute's discovery provision.

¶49. For instance, in *Powe v. Byrd*, 892 So. 2d 223 (Miss. 2004), we applied a statutory discovery rule which states that medical-malpractice claims must be filed "within two years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered." Miss. Code Ann. § 15-1-36(1) (Rev. 2003) (emphasis added). Pointing out that the plaintiff was aware of his injury as evinced by the two years

22

of prior medical treatment, we specifically rejected the plaintiff's claim that the statute of limitations did not begin to run until he received an expert opinion. *Id*. at 227-28.

¶50. A different discovery rule controls claims subject to our "catch-all" statute of limitations, which incorporates language different from the discovery rule in Section 15-1-36(1). Section 15-1-49(2) states:

> In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have <u>discovered, the injury</u>.

Miss. Code Ann. §15-1-49(2) (Rev. 2003) (emphasis added).

¶51. In *Owens-Illinois, Inc. v. Edwards*, 573 So. 2d 704 (Miss. 1990), we held that the discovery rule provided in Section 15-1-49(2) will be applied to products liability cases, and that the cause of action accrues and the statute of limitations begins at the time the plaintiff can reasonably be held to have knowledge of the injury or disease. *Id*. at 708-09.

¶52. Thus, comparing the discovery rules in the medical-malpractice statute and the "catch-all" statute, we have one which focuses on discovery of the date of the wrongful conduct, and another which focuses on the date of discovery of the injury or disease. It is simple enough to follow the dictates of these statutes, puzzling though their differences may be. The difficulty arises in applying, as we must today, a judicially-created discovery rule for which there is no statutory guidance.

23

¶53.    We are left to rely on the language of *Barnes* which, as stated earlier, we view as having been incorporated into the MTCA through reenactment.  In creating the discovery rule in *Barnes*, this Court held that:

> we find that justice is best served by applying a discovery standard to such cases. As we stated in *Smith v. Sanders*, 485 So. 2d 1051 (Miss. 1986):
>
>> There may be rare cases where the patient is aware of his injury prior to the [expiration of the limitations period], but does not discover and could not have discovered with reasonable diligence the act or omission which caused the injury. In such cases, the action does not accrue until the latter discovery is made.
>
> *Sanders*, 485 So. 2d at 1052-53.  Such is the case here.

*Barnes*, 485 So. 2d at 205-06.  Thus, we hold today that the limitations period for MTCA claims does not begin to run until all the elements of a tort exist, and the claimant knows or, in the exercise of reasonable diligence, should know of both the injury and the act or omission which caused it.[18]

## CONCLUSION

¶54.    We hold today that the MTCA's one-year statute of limitations begins to run when the claimant knows, or by exercise of reasonable diligence should know, of both the damage or injury, and the act or omission which proximately caused it.  We further hold that the finder of fact (in this case, the trial judge) must decide when those requirements are satisfied.

---

[18]We do not agree with the Graves separate opinion that – as a matter of law – the statute of limitations did not begin to run until Mrs. Caves received the autopsy report.  The question of when Mrs. Caves knew or, by exercise of reasonable diligence, should have known of both the injury and the alleged negligent act which caused it, is left to the trier of fact.

¶55. The trial judge granted summary judgment based on the fact that "the medical records for the events in question were obtained shortly after the decedent's death," and because "the actions of the decedent's family clearly show[ed] knowledge of a potential claim well within the year following the decedent's death." The trial court further specifically found that, because there were no "latent injuries or actions," the discovery rule had no application.

¶56. The operative question, however, is whether statutory notice was provided within a year next following the earliest date Mr. Caves (or his personal representative), by exercise of reasonable diligence, should have known of the injury and the acts or omission which caused them. Because the trial court did not precisely address this question, we reverse the trial court's grant of summary judgment and remand this case to the trial court for disposition consistent with this opinion.

¶57. **REVERSED AND REMANDED**.

**SMITH, C.J., WALLER, P.J., CARLSON, RANDOLPH AND LAMAR, JJ., CONCUR. EASLEY, J., CONCURS IN PART AND IN RESULT. DIAZ, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. GRAVES, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, P.J.; EASLEY, J., JOINS IN PART**.

**DIAZ, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶58. Although I join fully in Justice Graves' opinion, I write separately to endorse the majority's analysis regarding wrongful-death claims.

¶59.    As the majority rightly notes, the Legislature has dealt a confusing hand to the courts of this state by enacting a statute governing survival actions with an appearance more befitting a wrongful-death statute. The distinction between the two actions is critical, and the passage adopted from the Louisiana Supreme Court rightly addresses that distinction.

¶60.    Although the statute of limitations may begin to run prior to death on claims that eventually become survival actions, the statute of limitations on a wrongful-death claim, by its very nature, does not begin to run until the injured victim dies. No statute of limitations begins to run until all the elements of a tort, or cause of actions, are present. "[D]eath is a critical, and the final, element in the accrual of a wrongful death action . . . . Simply put, no wrongful-death claim exists until the death occurs . . . ." *McMillan v. Puckett*, 678 So. 2d 652, 655 (Miss. 1996) (quoting with approval *Gabriel v. Sch. Dist. No. 4, Libby, Montana*, 264 Mont. 177, 179-80, 870 P.2d 1351, 1352 (1994)).

¶61.    Any other rule would require wrongful death beneficiaries to take action even before they are wrongful death beneficiaries and drag their dying loved ones into court to squabble with the trial judge over the inconvenience of the victim's persistent pulse. Arguments in favor of such an outcome call to mind the classic scene from "Monty Python and the Holy Grail," in which a pauper beseeches a traveling mortician to take away his dying relative.

> MORTICIAN: Bring out your dead!
> PEASANT: Here's one.
> MORTICIAN: Nine pence.
> DYING MAN: I'm not dead!

26

MORTICIAN: What?

PEASANT: Nothing! Here's your nine pence.

DYING MAN: I'm not dead!

MORTICIAN: Here – he says he's not dead!

PEASANT: Yes, he is.

DYING MAN: I'm not!

MORTICIAN: He isn't.

PEASANT: Well, he will be very soon. He's very ill.

DYING MAN: I'm getting better!

PEASANT: No, you're not. You'll be stone-dead in a moment.

. . . .

MORTICIAN: I can't take him.

DYING MAN: I feel fine!

PEASANT: Oh, do us a favor.

MORTICIAN: I can't.

PEASANT: Well, can you hang around a couple of minutes? He won't be long.

*Monty Python and the Holy Grail* (Michael White Prod. 1975). Today's decision rightly leaves such absurd discussions to the work of British comedy troupes and not to the courts of this state.

¶62.    The majority also notes correctly that a victim's death does not necessarily wind the clock of the applicable statute of limitations. Maj. Op. at ¶ 30, n.11. If death occurs before the discovery (or time by which a diligent inquiry would have resulted in discovery) of the injury which led to death, then the statute does not begin to run until that point in time. "The operative time is when the plaintiff can reasonably be held to have knowledge of the injury itself, the cause of the injury, and the causal relationship of the injury and the conduct of the

27

[defendant]." ***Williams v. Kilgore***, 618 So. 2d 51, 54 (Miss. 1992) (quoting ***Smith v. Saunders***, 485 So. 2d 1051, 1052 (Miss. 1986)).

¶63. Therefore, although I join Justice Graves' opinion regarding the existence of genuine issues of material fact in this case, I agree with the majority's determination that claims for wrongful death do not answer to any statute of limitations until, at the very earliest, the date of death.

**GRAVES, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶64. I agree with the majority that a discovery rule applies to claims under the Mississippi Tort Claims Act (MTCA). I also agree with the majority that the limitations period for MTCA claims does not begin to run until the claimant knows or, in the exercise of reasonable diligence, should know of both the injury and the act or omission which caused it. However, I disagree with the majority's analysis regarding the wrongful-death statute and ***Jenkins v. Pensacola Health Trust***, 933 So. 2d 923 (Miss. 2006), as the majority acknowledges this is an action pursuant to the MTCA. Further, I disagree with the majority's vague instruction that this matter is remanded "to the trial court for disposition consistent with this opinion."

¶65. There is no "genuine issue of material fact." Miss. R. Civ. P. 56(c). As acknowledged by the majority, Mrs. Caves diligently attempted to obtain the autopsy report, but did not receive it until March of 2001. Mrs. Caves then obtained an expert affidavit on April 11, 2001. Mrs. Caves provided the hospital notice of a claim under the MTCA on February 13,

28

2002, within one year of being provided the autopsy report. Therefore, statutory notice was provided within one year.

¶66. Assuming arguendo that there is a question of fact regarding the timeliness of the statutory notice, that matter could be appropriately resolved at trial. In other words, if in fact there is a question about whether statutory notice was provided within a year, then that is a "genuine issue of material fact" sufficient to require denial of the motion for summary judgment. Miss. R. Civ. P. 56(c). The instant case is before this Court on the granting of a motion for summary judgment. The majority finds that a factual determination needs to be made but fails to specifically remand this matter for a trial. Our system of jurisprudence provides a vehicle which is appropriate for factual determinations. It is a trial. Even though the majority now recognizes the application of a discovery rule, it remains unwilling to specifically allow this matter to proceed to trial. Therefore, I concur in part and dissent in part.

¶67. Moreover, with the exception of the discussion of the statute-of-repose finding that the majority does not now address, I stand by my previous dissent published on November 1, 2007, and quoted in its entirety herein below:

¶68. The majority sua sponte finds that this Court has been unconstitutionally amending and misapprehending the Mississippi Tort Claims Act (MTCA) for several years. It finds further that a long line of precedent should be overruled. I disagree. Further, because the

29

majority unconstitutionally amends the MTCA and erroneously finds no discovery rule applicable to the MTCA, I respectfully dissent.

¶69.    This is not a case of first impression.  Yet, for the first time, this Court now finds that the MTCA is a statute of repose rather than a statute of limitations and offers up a quote from *Gaggini's Mississippi Limitations of Actions* to explain the distinction between the two.  However, the majority's analysis is erroneous.  The U.S. Supreme Court consistently has found that "[s]tatutes of limitation **are** statutes of repose." *Edwards v. Kearzey,* 96 U.S. 595, 603, 24 L. Ed. 793 (1878) (emphasis added).  *See also United States v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352, 62 L. Ed. 2d 259 (1979) (statutes of limitations "are statutes of repose. . . ."); and *Lewis v. Marshall*, 30 U.S. 470, 8 L. Ed. 195 (1831) ("Statutes of limitations have been emphatically and justly denominated statutes of repose.").  Nevertheless, various authorities have found distinctions.

¶70.    In comparing a statute of limitations with a statute of repose, Black's Law Dictionary says:

> While statutes of limitations are sometimes called "statutes of repose," the former bars right of action unless it is filed within a specified period of time after injury occurs, while "statute of repose" terminates any right of action after a specific time has elapsed, regardless of whether there has as yet been an injury.

Black's Law Dictionary 927 (6th ed. 1990).

¶71.    There is no authority for the quantum leap the majority now makes.  The majority is unable to offer a single authority supporting the application of a statute of repose, as so

30

defined, to the instant case. The Mississippi Legislature plainly and unambiguously entitled the statute in question "Statute of limitations . . ." and repeatedly refers to it as such. Courts consistently have applied this statute of limitations. Now the majority, in a contradictious opinion, finds that this Court should violate, in its language, "our constitutional prohibition from judicially amending statutes" by amending the statute to substitute the word "repose" for "limitations."

¶72.    Clearly, the MTCA contemplates the statute running from the time of discovery of the injury. Further, discovery is crucial to the notice-of-claim requirement. Section 11-46-11(1) of the MTCA states, in relevant part:

> [A]ny person having a claim for injury arising under the provisions of this chapter against a governmental entity or its employee shall proceed as he might in any action at law or in equity; provided, however, that ninety (90) days prior to maintaining an action thereon, such person shall file a notice of claim. . . .

Miss. Code Ann. § 11-46-11(1) (Rev. 2002). Further, the notice must contain the following:

> Every notice of claim shall contain a short and plain statement of the facts upon which the claim is based, including **the circumstances which brought about the injury, the extent of the injury, the time and place the injury occurred**, the names of all persons known to be involved, the amount of money damages sought and the **residence of the person making the claim at the time of the injury** and at the time of filing the notice.

Miss. Code Ann. § 11-46-11(2) (Rev. 2002) (emphasis added).

¶73. The majority concedes that this Court requires "strict compliance" with the notice provisions of the MTCA. The MTCA requires, in clear and plain language, that discovery of the injury triggers the running of the statute of limitations. Discovery of the injury is necessary for compliance with the notice-of-claim provision. The autopsy report was necessary to determine the cause of death and for Caves to be able to comply with the requirements of the notice of claim. The majority concedes that Caves requested the autopsy report on a weekly basis until she moved out of state and that her son then continued to request the report. Hence, it is clear that, although the plaintiff was diligent in her pursuit of the report, her persistent requests went unanswered. Due to a recalcitrant, uncooperative, dilatory third party, the defendant is now rewarded by the majority.

¶74. Moreover, the statute can be tolled pursuant to both the notice-of-claim provision and the savings clause in favor of minors and those of unsound mind in subsection (4) of the MTCA, which specifically says:

> [I]f any person entitled to bring any action under this chapter shall, at **the time at which the cause of action accrued**, be under the disability of infancy or unsoundness of mind, he may bring the action within the time allowed in this section after his disability shall be removed as provided by law.

Miss. Code Ann. § 11-46-11(4) (Rev. 2002) (emphasis added). This language in the MTCA evinces the Legislature's intention that the limitations period run from the time of accrual. A distinction cannot be made between an adult plaintiff and a minor. The time for bringing an action may be extended for a minor until after the disability is removed. However, the

32

relevant starting point for both must be the "time at which the cause of action accrued." To determine otherwise is in violation of the Mississippi Constitution. *See* Miss. Const. art. 3 §§ 24, 25. And clearly the cause of action does not accrue until discovery of the injury. "The operative time is when the patient can reasonably be held to have knowledge of the injury itself, the cause of the injury, and the causative relationship between the injury and the conduct of the medical practitioner." ***Smith v. Sanders***, 485 So. 2d 1051, 1052 (Miss. 1986). *See also* ***Moore v. Mem'l Hosp. of Gulfport,*** 825 So. 2d 658, 667 (Miss. 2002); ***Wayne Gen'l Hosp. v. Hayes***, 868 So. 2d 997, 1000-01 (Miss. 2004); ***Page v. Univ. of S. Miss.***, 878 So. 2d 1003, 1006 (Miss. 2004); and ***Wright v. Quesnel***, 876 So. 2d 362, 366 (Miss. 2004).

¶75. Further, statutes of repose are intended to be substantially longer than statutes of limitation and are intended to place an outside limit on the applicability of the discovery rule in medical malpractice cases. *See* Annotated Laws of Massachusetts, ALM GL ch. 260, § 4 (2007) (three-year statute of limitations and seven-year statute of repose); Official Code of Georgia Annotated, O.C.G.A. § 9-3-71 (two-year statute of limitations and five-year statute of repose); ***Musculoskeletal Institute v. Parham***, 745 So. 2d 946, 951 (Fla. 1999) (Florida Statute Section 95.11(4)(b) provides a two-year statute of limitations, four-year statute of repose, and then seven-year statute of repose where fraud, concealment or intentional misrepresentation of fact prevented discovery of the injury within the four-year period); and ***Anderson v. Wagner***, 79 Ill. 2d 295 (Ill. 1979) (two-year statute of limitations and four-year statute of repose). The majority has failed to establish any basis for judicially

amending the statute to impose a statute of repose which would be antithetical to the intended effect of such a statute.

> Statutes of limitation are statutes of repose. They are necessary to the welfare of society. The lapse of time constantly carries with it the means of proof. The public as well as individuals are interested in the principle upon which they proceed. They do not impair the remedy, but only require its application cation [sic] within the time specified. If the period limited be unreasonably short, and designed to defeat the remedy upon pre-existing contracts, which was part of their obligation, we should pronounce the statute void.

*Edwards v. Kearzey*, 96 U.S. 595, 603, 24 L. Ed. 793 (1878).

¶76.    The majority quotes *Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L. Ed. 2d 259 (1979), regarding the waiver of immunity intended by Congress in construing the statute of limitations.  However, the majority fails to mention that the U.S. Supreme Court found in *Kubrick* that a claim accrues when a plaintiff knows both the existence and the cause of the injury*. Id.*  Further, the Court said:

> We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment.  That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain.

*Kubrick,* 444 U.S. at 122, 100 S.Ct. at 359.  The majority simply dismisses the above language from *Kubrick* as a misrepresentation.  However, the majority fails to recognize the difference between knowing the existence and cause of an injury and knowing that the acts inflicting the injury constituted medical malpractice.

34

¶77. Moreover, the U.S. Supreme Court has specifically recognized not only that a statute can be tolled in certain instances even without a specific tolling provision, but also that a discovery rule applies in certain cases.

> *Holmberg* thus stands for the proposition that equity tolls the statute of limitations in cases of fraud or concealment; it does not establish a general presumption applicable across all contexts. The only other cases in which we have recognized a prevailing discovery rule, moreover, were decided in two contexts, latent disease and medical malpractice, "where the cry for [such a] rule is loudest," [citations omitted].

*TRW Inc. v. Andrews*, 534 U.S. 19, 27, 122 S.Ct. 441, 151 L. Ed. 2d 339 (2001) (referring to *Holmberg v. Armbrecht*, 327 U.S. 392, 66 S.Ct. 582, 90 L. Ed. 743 (1946), and quoting *Rotella v. Wood*, 528 U.S. 549, 555, 120 S. Ct. 1075, 145 L. Ed. 2d 1047 (2000)).

¶78. Furthermore, the U.S. Supreme Court has acknowledged the implication of a discovery rule when a statute is silent on the issue. "Federal courts, to be sure, generally apply a discovery accrual rule when a statute is silent on the issue, as civil RICO is here." *Rotella*, 528 U.S. at 555.[19]

---

[19]The majority maintains that the citation of *Rotella* is misplaced and then quotes additional language indicating, again, that the majority fails to recognize the distinction between existence and cause of an injury and knowing that the acts producing the injury constituted negligence. Ironically, the majority's citation of *Rotella* is incomplete. The additional quote of *Rotella* offered by the majority actually ends with the direct quote from *Kubrick* cited herein. Further, the *Rotella* Court said: "Although we said that the potential malpractice plaintiff 'need only ask' if he has been wronged by a doctor, considerable enquiry and investigation may be necessary before he can make a responsible judgment about the actionability of the unsuccessful treatment he received." *Id.* at 556.

¶79.     Additionally, the Supreme Court has found only that specific text addressing the precise question can "evince Congress' intent to preclude judicial implication of a discovery rule." *TRW*, 534 U.S. at 28. "Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Id.* (quoting *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-617, 100 S. Ct. 1905, 64 L. Ed. 2d 548 (1980)).

¶80.     In *TRW*, the Court said: "The [Fair Credit Reporting Act] does not govern an area of the law that cries out for application of a discovery rule, nor is the statute 'silent on the issue' of when the statute of limitations begins to run." *Id.* at 28. In the instant case, this Court is dealing with an area of the law "that cries out for application of a discovery rule" and the MTCA statute is "silent on the issue."[20]

¶81.     The majority states that some may find its result "harsh." It is not only harsh, but unfair, unjust and unfounded. The Legislature found the MTCA necessary as a matter of public policy. *See* Miss. Code Ann. § 11-46-3(1) (Rev. 2002). Public policy likewise dictates that this Court not improperly amend, interpret or skew the statutory authority in such a fashion that medical providers will have the ability to escape liability by withholding information until after the expiration of an unreasonably short, limited period. Moreover, the Mississippi Constitution ensures that a plaintiff will not be precluded from asserting a claim

---

[20]Both the majority and concurring opinions acknowledge that the statute is silent on the issue of a discovery rule, then find that such silence prohibits the application of a discovery rule. However, as discussed herein, such a finding is incorrect.

by a statute of limitations before an injury is even discovered. *See* Miss. Const. art. 3 §§ 24, 25.

¶82.    In the instant case, the MTCA statute is clearly a statute of limitations and not a statute of repose. This Court is dealing with an area of the law "that cries out for application of a discovery rule." Further, the MTCA statute requires the application of a discovery rule pursuant to the plain language of the statute and longstanding precedent. The majority acknowledges that the cases cited herein stand for the proposition that the statute of limitations begins to run upon discovery of the injury. Accordingly, I respectfully dissent.

**DIAZ, P.J., JOINS THIS OPINION. EASLEY, J., JOINS THIS OPINION IN PART.**