# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-IA-01572-SCT

*GARLOCK SEALING TECHNOLOGIES, LLC,*
*SUCCESSOR BY MERGER TO GARLOCK, INC.,*
*TRANE US INC., FORMERLY KNOWN AS*
*AMERICAN STANDARD, INC., RAPID-*
*AMERICAN CORPORATION*

*v.*

*MARY PITTMAN, EXECUTRIX OF THE ESTATE*
*OF LONNIE PITTMAN, DECEASED*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/29/2008 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DAWN E. FULCE |
| | THOMAS W. TYNER |
| | T. HUNT COLE, JR. |
| | JAMES GORDON HOUSE, III |
| | LAURIN DAVIS McGUFFEE |
| | TIMOTHY HUTSON JONES |
| | ROBERT M. ARENTSON, JR. |
| ATTORNEYS FOR APPELLEE: | JOHN TIMOTHY GIVENS |
| | TIMOTHY W. PORTER |
| | PATRICK C. MALOUF |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 10/14/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH

## NO. 2008-IA-01584-SCT

*TRANE US, INC. FORMERLY KNOWN AS*
*AMERICAN STANDARD, INC., FLOWSERVE US,*
*INC., AS SUCCESSOR TO ROCKWELL*
*MANUFACTURING CO., EMERSON ELECTRIC*
*CO., GARLOCK SEALING TECHNOLOGIES, LLC,*
*SUCCESSOR BY MERGER TO GARLOCK, INC.,*
*SEPCO CORPORATION AND FURON COMPANY*

*v.*

*MARY PITTMAN AS THE EXECUTRIX OF THE*
*ESTATE OF LONNIE PITTMAN*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/29/2008 |
| TRIAL JUDGE: | WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | T. HUNT COLE, JR. |
| | JAMES GORDON HOUSE, III |
| | LAURIN DAVIS McGUFFEE |
| | MARY WINTER VAN SLYKE |
| | RONALD G. PERESICH |
| | MICHAEL E. WHITEHEAD |
| | TIMOTHY HUDSON JONES |
| | CLAIRE W. KETNER |
| | JOHN ERNEST WADE, JR. |
| | SHARON F. BRIDGES |
| | WILLIAM BUCKLEY STEWART, SR. |
| | ROBERT P. THOMPSON |
| | DAWN E. FULCE |
| | THOMAS W. TYNER |
| | WALTER W. DUKES |
| ATTORNEYS FOR APPELLEE: | JOHN TIMOTHY GIVENS |
| | TIMOTHY W. PORTER |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 10/14/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**CONSOLIDATED WITH**

**NO. 2008-IA-01599-SCT**

*GARDNER DENVER, INC., GENERAL ELECTRIC COMPANY, THE GORMAN-RUPP COMPANY, ERRONEOUSLY NAMED AND SERVED AS THE GORMAN-RUPP COMPANY, INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO C. H. WHEELER MFG. CO., PATTERSON PUMP COMPANY, IPT PUMPS, AND ECONOMY PUMPS, DORR-OLIVER, INC., KEELER/DORR-OLIVER, ERRONEOUSLY SUED AS DORR-OLIVER, INC., SULZER PUMPS (US), INC., WARREN PUMPS, INC., WARREN-RUPP, INC., AND YUBA HEAT TRANSFER LLC., RAPID-AMERICAN CORPORATION*

*v.*

*MARY PITTMAN, EXECUTRIX OF THE ESTATE OF LONNIE PITTMAN, DECEASED*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/29/2008 |
| TRIAL JUDGE: | WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | T. HUNT COLE, JR. |
| | JAMES GORDON HOUSE, III |
| | LAURIN DAVIS McGUFFEE |
| | ROBERT M. ARENTSON, JR. |
| ATTORNEYS FOR APPELLEE: | JOHN TIMOTHY GIVENS |
| | TIMOTHY W. PORTER |
| | PATRICK C. MALOUF |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 10/14/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.    In December 2002, Lonnie Pittman filed an asbestos suit against the above-listed entities (collectively referred to as "Appellants"), along with numerous others.  It was later

3

discovered that Lonnie had died long before the suit was ever filed. Mary Pittman, Lonnie's widow, attempted to substitute herself as the proper plaintiff. Later, in August 2005, Mary filed an amended complaint as executrix of Lonnie's estate. We must decide whether the December 2002 complaint—filed in the name of a dead person—was a nullity, and, if so, whether Mary nevertheless could be substituted as the proper party to that complaint. We find that the December 2002 complaint was a nullity, and as such, Mary could not be substituted to it. But our inquiry does not end there. We also must determine the effect of Mary's 2005 amended complaint. This amended complaint, though instituted by a proper party, was filed outside the statute of limitations. But under Mississippi law, the statute of limitations is an affirmative defense that can be waived in certain circumstances. We must decide whether all or certain Appellants have waived the defense here. We find that they have not. Because the initial complaint was a nullity, and because Mary's 2005 amended complaint was barred by the statute of limitations, summary judgment should granted for Appellants. We therefore reverse and render the judgment of the circuit court.

**FACTS**

¶2.     In December 2002, Robin C. Nettles and Lonnie Pittman filed an asbestos suit against eighty-four named defendants and several John Does. In the following months, Robin and Lonnie filed two amended complaints that added hundreds more defendants.

¶3.     On April 16, 2004, one of the defendants, who has since been dismissed from this case, filed a suggestion of death showing that Lonnie had died on March 11, 2001—nearly two years before the original suit had been filed. Plaintiffs' counsel responded days later by

4

filing a motion to substitute Mary C. Pittman, Lonnie's widow, as a plaintiff. One day after the motion to substitute was filed, an order granting substitution was entered.

¶4. On August 16, 2004, numerous defendants, including several who are parties to this appeal, filed a motion to dismiss, or in the alternative, to sever Robin's and Lonnie's claims. The motion sought dismissal of Lonnie's claims on the basis that he had predeceased the filing of the suit. The circuit court conducted a hearing on this motion and, one month later, the claims were severed by agreed order.

¶5. On May 18, 2005, certain defendants noticed a hearing on June 22, 2005, for their motion to dismiss, or alternatively, motion for a more definite statement, motion to require particularity under Rule 9(b) of the Mississippi Rules of Civil Procedure, and motion for a protective order. On the date of the hearing, the parties executed an agreed order requiring plaintiff's counsel to file an amended complaint that conformed with the requirements set forth in *Harold's Auto Parts, Inc., v. Mangialardi*, 889 So. 2d 493 (Miss. 2004), and its progeny.

¶6. On August 22, 2005, an amended complaint was filed naming Mary C. Pittman, Executrix of the Estate of Lonnie Pittman, as the plaintiff. The amended complaint alleged that Lonnie's exposure to asbestos had caused him to suffer numerous asbestos-related injuries and, ultimately, death. Each of the Appellants answered the amended complaint, asserting the statute of limitations as a defense.

¶7. About two months later, on October 14, 2005, Gardner Denver, Inc., General Electric, Company, Gorman-Rupp Co., Dorr-Oliver, Inc., Keeler/Dorr-Oliver, erroneously sued as Dorr-Oliver, Inc., Sulzer Pumps (US), Inc., Warren Pumps, Inc., Warren-Rupp, Inc., and

5

Yuba Heat Transfer, Inc., filed a motion to dismiss and motion for protective order. Trane US, Inc., formerly known as American Standard, Inc., and Emerson Electric Co., later joined this motion, as well. These particular defendants, all parties to this appeal, will be referred to hereinafter as the "Gardner-Trane Appellants." The Gardner-Trane Appellants asserted that the substitution of Mary was improper under Rule 25 of the Mississippi Rules of Civil Procedure, and that the entire matter should be dismissed because the statute of limitations had expired. They further asked that all discovery be stayed. No hearing on this motion was requested at the time.

¶8.    Very little action took place for more than twenty months until May 31, 2007, when Mary noticed a deposition. Days later, on June 6, 2007, some twenty and a half months after filing its answer to Mary's amended complaint, Garlock Sealing Technologies, LLC, filed a motion for summary judgment. Garlock maintained that, since Lonnie had died before the complaint was filed, the initial complaint was a nullity. Garlock further alleged that the 2005 amended complaint was barred by the statute of limitations.

¶9.    On June 8, 2007, both Garlock and the Gardner-Trane Appellants noticed a hearing on their respective motions.

¶10.   A hearing was held in August 2007 on Garlock's Motion for Summary Judgment and on the Gardner-Trane Appellants' Motion to Dismiss and Motion for Protective Order. The circuit court denied both parties' motions. It denied Garlock's Motion for Reconsideration, as well. Garlock sought interlocutory review of this decision, but this Court denied Garlock's petition as untimely.

6

¶11.    On February 12, 2008, a motion for trial setting was filed.  The following week, on February 21, 2008, Trane filed a motion to dismiss on grounds that the circuit court lacked subject matter jurisdiction and that the statute of limitations had expired.  Trane purported that it had recently discovered that Mary was not the duly-appointed executrix of Lonnie's estate at the time she filed the 2005 amended complaint.  Trane alleged that, at the time Mary filed the 2005 amended complaint, she had not taken the oath of office requied by law, that letters testamentary had not been issued, that she had in fact abandoned the probate of Lonnie's will, and that the chancery clerk had dismissed Lonnie's estate matter due to Mary's failure to prosecute.  All Appellants joined Trane's motion to dismiss.

¶12.    A few months later, on July 18, 2008, Garlock filed its second motion for summary judgment.  Garlock argued once again that the initial, 2002 complaint was a nullity, and that the statute of imitations had expired.  It also asserted that Mary lacked standing to file the 2005 amended complaint because she was not executrix at the time.  Mary responded by filing a motion in limine and motion to strike.  She argued that Garlock's second motion for summary judgment was a mere repetition of issues previously considered and disposed of by the circuit court.  She moved further to strike portions of any filings that simply rehashed issues already decided.

¶13.    Following a hearing on August 21, 2008, the circuit court denied Trane's and Garlock's motions.  It also denied Mary's motion to strike.  Thereafter, various Appellants filed three separate petitions for interlocutory appeal.  We granted those petitions, stayed the proceedings, and consolidated their appeals.

**DISCUSSION**

7

¶14. Denials of summary judgment are reviewed de novo. ***Burley v. Douglas***, 26 So. 3d 1013, 1016 (Miss. 2009) (citing ***Monsanto v. Hall***, 912 So. 2d 134, 136 (Miss. 2005)). Summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c). The evidence must be considered in the light most favorable to the party against whom the motion is made. ***In re Estate of Laughter***, 23 So. 3d 1055, 1060 (Miss. 2009) (quoting ***Bullock v. Life Ins. Co.***, 872 So. 2d 658, 660 (Miss. 2004)).

## I. Because Lonnie died nearly two years before the complaint was filed, the initial complaint was a nullity.

¶15. Four months or so after the suggestion of death was filed, several Appellants sought dismissal on the basis that Lonnie had predeceased the filing of the suit. Appellants continue to argue vehemently that the initial, December 2002, complaint was a nullity because Lonnie predeceased its filing. We agree.

¶16. In its early days, this Court held that a dead person cannot institute a suit. ***Humphreys v. Irvine***, 14 Miss. 205, 205 (6 S. & M. 1846). In ***Humphreys***, defendants sought to offer evidence which showed that the plaintiff was dead at the time the suit was filed. ***Id.*** The trial court excluded this evidence. ***Id.*** This Court held that the evidence should not have been excluded, and, significantly, that the suit must be abated if such evidence were proven true. ***Id.*** The Court reasoned that evidence of a plaintiff's death prior to suit being filed "rises above the mere technical rules of pleading, and goes to the right of the court to proceed." ***Id.***

8

¶17. More than a century after *Humphreys*, this Court affirmed the general rule that "'[i]n every action there must be a real plaintiff who is a person in law and is possessed of a legal entity or existence as a natural, artificial, or quasi-artificial person, and a suit brought in the name of that which is not a legal entity is a mere nullity.'" *Collins v. Gen. Elec. Co.*, 239 Miss. 825, 833, 123 So. 2d 609, 613 (Miss. 1960) (recognizing the general rule, but choosing not to apply it because the plaintiff in that case had filed suit under a trade name) (quoting 67 C.J.S. *Parties* § 4, p. 896).

¶18. More recently, the Court of Appeals stated that a claim filed in the name of a deceased person has no hope of success, and is therefore frivolous. *Ill. Cent. R. Co. v. Broussard*, 19 So. 3d 821, 824 (Miss. App. 2009) (noting that such claims are friviolus, but finding no abuse of discretion in the trial court's refusal to impose sanctions).

¶19. Other courts agree that an action filed in the name of a deceased person or nonexistent entity is a nullity. *E.g.*, *Banakus v. United Aircraft Corp.*, 290 F.Supp. 259, 260 (S.D.N.Y. 1968) (personal-injury suit brought in the name of deceased person treated as a nullity); *Adelsberger v. U. S.*, 58 Fed. Cl. 616, 618-19 (Fed. Cl. 2003) (action brought in the name of a deceased individual declared null); *Black Canyon Citizens Coalition, Inc. v. Bd. of County Comm'rs of Montrose County*, 80 P. 3d 932, 933-35 (Colo. App. 2003) (suit filed in the name of a nonexistent corporation deemed void ab initio); *Matthews v. Cleveland*, 159 Ga. App. 616, 617, 284 S.E.2d 634, 636 (1981) (deceased person cannot commence an action); *Levering v. Riverside Methodist Hosp.*, 2 Ohio App. 3d 157, 159, 441 N.E.2d 290, 291 (Ohio App. 1981) (complaint declared a nullity where plaintiff died prior to its filing);

9

*Gregory v. DiCenzo*, 713 A.2d 772, 775 (R.I. 1998) (complaint commenced in deceased person's name deemed a nullity).

¶20. In accord with our longstanding precedent, we find that the December 2002 complaint was null and void.

> **II. Because Rule 17(a) of the Mississippi Rules of Civil Procedure presupposes the existence of a valid "action"—which is absent here—the rule does not allow Mary to be substituted as plaintiff.**

¶21. Mary argues that Rule 17(a) of the Mississippi Rules of Civil Procedure allows her to be substituted as a party. For support, she points to a decision from the United States Court of Appeals for the Tenth Circuit analyzing the federal counterpart to Mississippi's Rule 17(a). *Esposito v. United States*, 368 F. 3d 1271 (10th Cir. 2004).

¶22. In *Esposito*, Raymond Elio Esposito's widow, Yolanda, instituted a wrongful-death suit which named Raymond as the only plaintiff. *Id.* at 1272. Raymond, however, had died approximately three years before the suit was filed. *Id.* at 1272. A federal district court found no justifiable basis for substituting Yolanda as plaintiff and dismissed the case for lack of subject matter jurisdiction. *Id.* at 1272-73. The United States Court of Appeals for the Tenth Circuit addressed whether the suit, having been brought in the name of a deceased plaintiff, was a nullity, and whether Yolanda could be substituted as the rightful plaintiff. *Id.* at 1277. The Tenth Circuit interpreted Rule 17(a) of the Federal Rules of Civil Procedure as allowing the substitution of Yolanda. *Id.* at 1277-78. It reasoned that Rule 17(a) does not require that the original plaintiff have capacity to sue. *Id.* at 1277. It explained further that, according to the language of Rule 17(a), the substitution of the real party in interest is to have "the same effect" as if the suit initially had been commenced in the substituting party's name.

*Id.* at 1277-78 (quoting Fed. R. Civ. P. 17(a)). The Tenth Circuit emphasized heavily that Rule 17(a) is designed to prevent forfeiture and must be applied liberally. *Id.* at 1278 (citing Fed R. Civ. P. 17 advisory committee notes (1966 amendment)).

¶23. Rule 17(a) of the Mississippi Rules of Civil Procedure is the same as federal rule 17(a). As a result, we consider *Esposito*'s construction of federal rule 17(a) as persuasive for how we should construe our rule. **Brown v. Credit Ctr.**, Inc., 444 So. 2d 358, 364 n.1 (Miss. 1983). Though *Esposito* is persuasive, it is not binding. Hence we are free to decide whether to adopt its construction of Rule 17(a).

¶24. The holding in *Esposito* is well-reasoned and tenable, but it is not the only plausible interpretation of Rule 17(a). Nor is it the interpretation that best comports with our law.

¶25. *Esposito* correctly notes that nothing in Rule 17(a) requires that the original plaintiff have the capacity to sue. *Id.* at 1277. Yet capacity is not really the issue in a case like the one before us. "Capacity to sue" relates to a party's right to litigate. **Glickstein v. Sun Bank/Miami**, **N.A.**, 922 F. 2d 666, 670 (11th Cir. 1991), *abrogated on other grounds by* **Saxton v. ACF Indus., Inc.**, 254 F. 3d 959, 963 (11th Cir. 2001) (quoting 6A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1542, at 327 (2d ed. 1990); **Iowa Coal Mining Co., Inc. v. Monroe County**, 555 N.W.2d 418, 428 (Iowa 1996) (quoting 59 Am. Jur. 2d *Parties* § 24, at 410 (1987)). It has reference to legal disability, such as infancy or mental incompetency. **Iowa Coal**, 555 N.W.2d at 428 (quoting 59 Am. Jur. 2d *Parties* § 24, at 410). Our concern, rather, is a distinct but closely related concept: legal existence. *See* **Iowa Coal**, 555 N.W.2d. at 428 (noting that capacity to sue is distinct but closely allied to legal existence) (quoting 59 Am. Jur. 2d *Parties* § 24, at 410). Legal existence is a basic threshold;

11

it serves as a prerequisite for having capacity to sue. *See Adelsperger*, 58 Fed. Cl. at 618 (citations omitted). Legal existence means, at a minimum, that the individual suing is alive.

¶26. Even conceding that Rule 17(a) does not speak to whether the original plaintiff must have capacity to sue, it necessarily presupposes that the plaintiff filing suit legally exists. The rule provides that "[e]very *action* shall be prosecuted in name of the real party in interest," and that "[n]o *action* shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection . . . for substitution[] of the real party in interest . . . ." Miss. R. Civ. P. 17(a) (emphasis added). The rule thus takes for granted or presumes that a valid "action" exists. *See* Miss. R. Civ. P. 17(a); *Matthews*, 284 S.E.2d. at 635-36 (interpreting a statute similar to Rule 17(a) in like manner); *Gregory*, 713 A.2d at 773 (construing Rule 17 of Rhode Island's Superior Court Rules of Civil Procedure in a similar fashion). But, as we have already discussed, no "action" exists where the original complaint is filed by a dead person. Such complaints are null and void from the outset. In short, without a live person initiating suit, there can be no action; and without an action, substitution cannot be had under Rule 17(a).

¶27. We find that Rule 17(a) does not allow Mary to be substituted as a party. Because the December 2002 complaint was a nullity, a valid action was never commenced. And where a valid action does not exist, Rule 17(a) does not apply.

¶28. In a similar vein, we find further that an amended complaint cannot relate back to an original complaint that was a nullity. *See Tolliver ex rel. Wrongful Death Beneficiaries of Green v. Mladineo*, 987 So. 2d 989, 995 (Miss. App. 2007). The basic rationale is that there is simply nothing to amend. As a result, where the original complaint is a nullity, any

12

amended complaints filed later must stand on their own merits. This leads us to consider the issues surrounding Mary's 2005 amended complaint.

**III.** **Because Mary is a "listed relative" under our wrongful-death statute, she had standing to file the August 2005 amended complaint regardless of whether she was duly qualified as executrix of Lonnie's estate at the time of filing.**

¶29. Appellants argue that Mary lacked standing to file the August 2005 amended complaint because she was not the duly-qualified executrix of Lonnie's estate at the time she filed the complaint. They contend, primarily, that Mary never took the oath of office that is required before letters testamentary can be issued. *See* Miss. Code Ann. § 91-7-41 (Rev. 2004).

¶30. There is no need to discuss the series of mishaps surrounding Lonnie's estate matter, or whether Mary was duly qualified as executrix when she filed suit. Under Mississippi law, Mary had standing to file suit regardless.

¶31. In her 2005 amended complaint, Mary sought damages for injuries that Lonnie had suffered as a result of his exposure to asbestos. At no point did she seek to recover damages for injuries that she or anyone else had suffered as a result of Lonnie's death. Her claims, therefore, are best characterized as survival claims rather than true wrongful-death claims. *See Caves v. Yarbrough*, 991 So. 2d 142, 149 (Miss. 2008). Survival claims are those that seek to recover damages that the decedent could have recovered had death not ensued. *Id.* at 150. They refer to damages suffered by the decedent from the time of injury until death. *Id.* at 149 (quoting *Taylor v. Giddens*, 618 So. 2d 834, 840 (La. 1993)). True wrongful-death claims, on the other hand, are those brought to recover damages that one person's death causes to another. *Caves*, 991 So. 2d at 149.

13

¶32. Even though Mississippi has a separate survival statute,[1] our wrongful-death statute[2] encompasses all claims, including survival claims, resulting from the tort that proximately caused the death. *Id.* at 149-50. And where the same wrongful conduct causes both personal injury and death—as is alleged here—once death occurs, the personal-injury claims are embraced in the "one suit" for wrongful death. ***Burley v. Douglas***, 26 So. 3d 1013, 1019 n.6 (Miss. 2009). In such cases, once the person dies, the survival claims are not actionable by the estate under the survival statute. *Id.*

¶33. Here, Mary alleges that the Appellants' wrongful conduct caused Lonnie various injuries, and ultimately, death. As a result, once Lonnie had died, any survival claims were subsumed within the "one suit" for wrongful death. *See id.* We thus construe Mary's 2005 amended complaint as having been brought under the wrongful-death statute. The implications of this are significant with regard to standing.

¶34. The wrongful-death statute allows a suit to be brought by the personal representative, certain listed relatives, and "interested parties." Miss. Code Ann. § 11-7-13 (Rev. 2004). There is no dispute in this case that Mary is Lonnie's widow. A decedent's widow is one of the "listed relatives" enumerated in Section 11-7-13. Miss. Code Ann. § 11-17-13 (Rev. 2004). Consequently, the wrongful-death statue conferred on Mary standing to bring the 2005 amended complaint regardless of whether she had been formally appointed as executrix of Lonnie's estate when the 2005 amended complaint was filed. We therefore find Appellants' lack-of-standing argument to be without merit.

---

[1] Miss. Code Ann. § 91-7-233 (Rev. 2004).

[2] Miss. Code Ann. § 11-7-13 (Rev. 2004).

14

**IV. Because Appellants have not actively participated in the litigation, they have not waived the statute-of-limitations defense.**

¶35. Mary asserts that the "primary issue" on appeal is whether Appellants have waived their statute-of-limitations defense.

¶36. Negligence or products-liability causes of action that involve latent diseases, such as asbestosis, are subject to the three-year statute of limitations under Section 15-1-49. *Owens-Illinois, Inc. v. Edwards*, 573 So. 2d 704, 706-09 (Miss. 1990) (applying the statute to a suit for asbestos-related injuries). In such cases, "[t]he cause of action accrues and the limitations period begins to run when the plaintiff can reasonably be held to have knowledge of the injury or disease." *Id.* at 709.

¶37. The parties here do not dispute that the three-year statute of limitations applies, nor do they argue about when the statute of limitations began to run. Appellants ask that we assume the statute of limitations began to run on the date of Lonnie's death, March 11, 2001. Mary does not contest the point. At the August 2007 hearing, she represented that, since the December 2002 complaint was filed two years after Lonnie's death, she had one year remaining to file suit. And at the December 2007 hearing, she went so far as to acknowledge that if the Appellants had raised the statute-of-limitations defense back in 2004, they "quite possibly" would have been successful.

¶38. We thus will assume that the statue of limitations began to run on March 11, 2001. Based on that date, the statute of limitations expired on March 11, 2004. This would put Mary's 2005 amended complaint well outside the statute of limitations, unless the Appellants

15

have waived this as a defense. Mary argues that Appellants have done so by waiting too long to assert and pursue the defense, while simultaneously actively participating in the litigation.

¶39.   Waiver is matter of law where the material facts and circumstances are undisputed or clearly established. *Bott v. J. F. Shea Co., Inc.*, 388 F. 3d 530, 534 (5th Cir. 2004) (quoting *First Interstate Bank of Arizona, N.A. v. Interfund Corp.*, 924 F. 2d 588, 595 (5th Cir. 1991)).

¶40.   In *MS Credit Center, Inc. v. Horton*, 926 So. 2d 167 (Miss. 2006), we found that the right to compel arbitration may be waived if there has been a substantial and unreasonable delay in the assertion and pursuit of the right, coupled with active participation in the litigation process. *Horton*, 926 So. 2d at 180-81. Prejudice to the party resisting arbitration also was noted as a factor that should be considered. *Id.* at 180 n.7 (citing *Russell v. Performance Toyota, Inc.*, 826 So. 2d 719, 724 (Miss. 2002)).

¶41.   It should be pointed out that, historically, arbitration has been considered an alternative resolution process, a party's right to which is considered waived if litigation is pursued. *See Cox v. Howard, Weil, Labouisse, Friedrichs, Inc.*, 619 So. 2d 908, 913-14 (Miss. 1993) (citing *Cornell & Co. v. Barber & Ross Co.*, 360 F.2d 512, 513 (D.C. Cir.1966)) (stating that, under the Federal Arbitration Act, a party waives the right to demand arbitration where it actively participates in a lawsuit or takes other action inconsistent with the right). *Horton*, however, extended this concept beyond the arbitration context.

¶42.   In *Horton*, we added that "[a] defendant's failure to timely and reasonably raise and pursue the enforcement of any affirmative defense or other affirmative matter or right which would serve to terminate or stay[] the litigation, coupled with active participation in the

16

litigation process, will ordinarily serve as a waiver." ***Horton***, 926 So. 2d at 180. We explained that "pursuit" means more than simply asserting the affirmative defense in a pleading. ***Id.*** at 181 n.9. A defendant must bring the affirmative defense to the court's attention by motion and request a hearing. ***Id.***

¶43. We have since applied ***Horton*** to analyze whether the affirmative defense of the statute of limitations was waived. ***Spann v. Diaz***, 987 So. 2d 443, 446-48 (Miss. 2008); ***Jones v. Fluor Daniel Servs. Corp.***, 32 So. 3d 417, 420-21 (Miss. 2010). These cases illustrate that the statute-of-limitations defense can be waived even where the defense is asserted in a defendant's initial pleading or answer. ***Spann***, 987 So. 2d at 446; ***Jones***, 32 So. 3d at 420.

¶44. Each of the Appellants in this case raised the statute of limitations as a defense in its answer to Mary's 2005 amended complaint. But their actions, or lack thereof, following their answers create an issue of whether they waived the defense.

¶45. Appellants pursued the statute-of-limitations defense at different points. The Gardner-Trane Appellants raised the defense in their October 14, 2005, motion to dismiss and motion for protective order, filed just two months after the 2005 amended complaint. The Gardner-Trane Appellants, however, did not pursue a hearing on their motion until June 8, 2007, nearly two years after Mary had filed the 2005 amended complaint. Garlock waited almost two years before pursuing the statute-of-limitations defense in its June 6, 2007, motion for summary judgment. Rapid-American Corporation, Sepco Corporation and Furon Company, and Flowserve US, Inc., waited even longer; they first pursued the statue-of-limitations defense by joining Trane's February 21, 2008, motion to dismiss.

17

¶46.   Each of the Appellants then waited almost two years or longer to pursue the statute-of-limitations defense. This certainly constitutes a long delay. *See id.* (indicating that an eight-month delay is too long). But a lengthy delay typically is not enough to constitute waiver of an affirmative defense. *See id.* at 180. **Horton** instructs that, ordinarily, there must be "a substantial and unreasonable delay in pursuing the right" *plus* "active participation in the litigation" before waiver will be found. **Id.** at 179-81. These determinations, furthermore, are to be made on a case-by-case basis. **Id.** at 181.

¶47.   Mary points to various actions by Appellants which she says amount to active participation in the litigation. First, an agreed scheduling order and an order setting the case for trial were entered on May 20, 2004. Thereafter, on June 22, 2005, Garlock's attorneys entered into an agreed order allowing Mary to file the 2005 amended complaint. Then, on October 21, 2005, Garlock filed designations of experts, fact witnesses, and exhibits. And on June 15, 2006, Garlock filed a motion to compel and notice of hearing. One month later, Garlock cancelled this hearing by filing a notice of cancellation.

¶48.   We place little weight on the May 2004 agreed scheduling order and the June 2005 agreed order that allowed Mary to file the 2005 amended complaint. Appellants point out that the May 2004 agreed scheduling order and the order setting the case for trial pertained to Robin's, not Lonnie's, claims. Additionally, the circumstances leading up to the June 2005 agreed order are somewhat murky. Appellants allege that during the October 2004 hearing on their motion to dismiss, or alternatively, to sever Robin's and Lonnie's claims, Judge Kidd stated that he would reserve ruling on their motion to dismiss until the claims were severed. Mary does not deny this allegation; she simply insists that it is unsupported

18

in the record because no transcript exists of the October 2004 hearing. Appellants insist that it was their understanding that they could not proceed any further until Robin's and Lonnie's claims were severed and an amended complaint was filed. This would help to explain why they entered the June 2005 agreed order which allowed plaintiff's counsel to file an amended complaint that conformed with the requirements set forth in *Mangialardi*.

¶49. Garlock's actions following the 2005 amended complaint show that it did in fact participate in the litigation, but its participation falls short of what previously has been held to constitute waiver of an affirmative defense. *See E. Miss. State Hosp. v. Adams*, 947 So. 2d 887, 889, 891 (Miss. 2007) (waiver of insufficiency of process and insufficiency of service of process found where not pursued for more than two years, during which time defendants filed a motion for summary judgment, motions to compel, motion for status conferences, and motion for additional discovery); *Estate of Grimes v. Warrington*, 982 So. 2d 365, 369 (Miss. 2008) (waiver of tort-immunity defense found where not pursued for five years, during which time the case was twice reset for trial, experts were designated and deposed on the merits of the claim, and defendants filed a motion in limine to exclude portions of the plaintiff's expert's testimony); *Meadows v. Blake*, 36 So. 3d 1225, 1232-33 (Miss. 2010) (defendants waived the defense of plaintiffs' failure to attach a certificate of expert consultation where they did not pursue it for two years, but at the same time, filed a motion for partial summary judgment, participated in discovery, filed a motion to compel, entered into three scheduling orders, and designated experts); *Hutzel v. City of Jackson*, 33 So. 3d 1116, 119-21 (Miss. 2010) (waiver of right to assert affirmative defense of release and accord and satisfaction found where defendant did not raise the defense in its initial answer

19

and waited twenty-six months to raise it, plus both parties filed interrogatories and requests for production of documents and one party noticed a deposition).

¶50. Further, we must consider Garlock's actions in context. This was a mass-tort case involving hundreds of defendants that was still in its early stages. No trial date had been set and no witnesses were deposed during the lengthy delay. The bulk of activity between the 2005 amended complaint and Garlock's first motion for summary judgment involved the dismissal of several defendants.

¶51. We find that neither Garlock nor any other Appellants actively participated or advanced the litigation before us. Thus the statute-of-limitations defense has not been waived.

## CONCLUSION

¶52. The statute of limitations in this case expired on March 11, 2004. The December 2002 complaint, being a nullity, failed to toll the running of the statute of limitations. We find that Appellants have not waived their statute-of-limitations defense; therefore, we are constrained to find that Mary's 2005 amended complaint was barred by the statute of limitations. Accordingly, we reverse and render the judgment of the circuit court.

¶53. **REVERSED AND RENDERED.**

**CARLSON, P.J., DICKINSON, LAMAR AND PIERCE, JJ., CONCUR. GRAVES, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND CHANDLER, JJ. RANDOLPH, J., NOT PARTICIPATING.**

**GRAVES, PRESIDING JUSTICE, DISSENTING:**

¶54. The majority of this Court misapprehends numerous cases from multiple jurisdictions in support of its decision to reverse the denials of summary judgment in the Circuit Court of

20

the First Judicial District of Hinds County. Because I would find that the appellants fail to demonstrate that no genuine issue of material fact exists and that the trial court should be affirmed, I respectfully dissent.

¶55. Lonnie Pittman died of lung cancer on March 11, 2001. A complaint was filed on behalf of Robin Nettles and Lonnie Pittman on December 31, 2002, against multiple defendants. The complaint referred repeatedly throughout to "Plaintiffs and Plaintiffs' decedents" and stated:

> As a direct and proximate contributing result of having inhaled, ingested, or otherwise having been exposed to asbestos during the exposure period, Plaintiffs and Plaintiffs' decedents have received injuries, both physically and mentally, such as asbestosis, pulmonary and bronchogenic carcinoma, mesothelioma, reduced lung volume, pleural plaques, interstitial lung fibrosis and cardiac and circulatory disease, and increased physical and mental anguish associated with increased susceptibility to one of the foregoing diseases; and, ultimately death.

¶56. Plaintiffs filed an amended complaint with additional defendants on January 30, 2003. Defendant 3M filed a suggestion of death on April 16, 2004. The plaintiffs immediately filed a motion to substitute Mary Pittman as an heir of Lonnie Pittman, which the trial court granted by order filed May 3, 2004.

¶57. On August 16, 2004, multiple defendants, including Garlock Inc., filed a Motion to Dismiss, or in the Alternative, to Sever Claims of Lonnie Pittman. On November 24, 2004, the trial court entered an Agreed Order of Severance of Robin C. Nettles, stating that Nettles' claims would be transferred to Pike County. Thereafter, Mary Pittman filed an Amended Complaint, which was answered by various defendants. Various pleadings and responses

21

were filed over the next couple of years. However, in the interest of clarity, only the relevant pleadings are set out herein.

¶58. Various defendants, including Gardner Denver, Inc., filed a Motion to Dismiss and Motion for Protective Order on October 14, 2005. The trial court entered an Order Denying Certain Defendants' Motion to Dismiss and Motion for Protective Order on October 23, 2007, finding the existence of genuine issues of material fact.

¶59. On June 6, 2007, Garlock Sealing Technologies, LLC, (Garlock) filed a Motion for Summary Judgment. The trial court denied Garlock's motion for summary judgment by order entered October 19, 2007, finding the existence of genuine issues of material fact. The trial court also denied Garlock's motion to reconsider by order entered December 28, 2007.

¶60. On February 21, 2008, Trane U.S., Inc., filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction and Statute of Limitations. Various other defendants joined in this motion. On July 18, 2008, Garlock filed another Motion for Summary Judgment with Incorporated Memorandum in Support. On August 14, 2008, Pittman filed a response to Garlock's motion, asserting that Garlock was attempting to raise the same issues for a third time and asking the court to strike those portions of the motion previously raised. On August 19, 2008, Pittman filed a Motion in Limine for Hearing on August 21, 2008, and Motion to Strike Portions of Defendants' Motions/Joinders Previously Argued and Ruled Upon. Garlock likewise filed a motion to strike Pittman's supplemental response to the motion for summary judgment. After a hearing on August 21, 2008, the trial court denied both motions to strike, Garlock's motion for summary judgment, and Trane's motion to dismiss. Thereafter, Gardner Denver, et al., Garlock and Trane (hereinafter "Trane") filed petitions for interlocutory appeal which

22

were granted by this Court on December 15, 2008. This Court further stayed the proceedings in the trial court and consolidated the appeals for consideration.

¶61.   This Court applies a de novo standard of review of a trial court's grant or denial of summary judgment. *Aikens v. Whites*, 8 So. 3d 139, 140 (Miss. 2008). "The evidence must be viewed in the light most favorable to the party against whom the motion has been made, and the moving party bears the burden of demonstrating that no genuine issue of fact exists." *Id*. (citing *Heigle v. Heigle*, 771 So. 2d 341, 345 (Miss. 2000)). This Court looks at all evidentiary matters in the record, including pleadings, depositions, answers to interrogatories, admissions, affidavits, etc. *Aikens*, 8 So. 3d at 140; Miss. R. Civ. P. 56(c). If there is no genuine issue of material fact, then the moving party is entitled to judgment as a matter of law. Miss. R. Civ. P. 56(c). If there is doubt as to whether or not a fact exists, it should be resolved in favor of the nonmoving party. *Aikens*, 8 So. 3d at 140.

¶62.   Trane submits that Rule 25 of the Mississippi Rules of Civil Procedure prohibits substitution where the plaintiff was deceased when the suit was filed. Although the majority fails to address the applicability of Rule 25, I find it a necessary part of the analysis.

¶63.   Rule 25 of the Mississippi Rules of Civil Procedure provides, in relevant part:

(1) If a party dies and the claim is not thereby extinguished, the court shall, upon motion, order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of summons. The action shall be dismissed without prejudice as to the deceased party if the motion for substitution is not made within ninety days after the death is suggested upon the record by service of a statement of the fact of the death as herein provided for the service of the motion.

23

(2) In the event of the death of one or more of the plaintiffs or of one or more of the defendants in an action in which the right sought to be enforced survives only to the surviving plaintiff or only against the surviving defendants, the action does not abate. The death shall be suggested upon the record and the action shall proceed in favor of or against the surviving parties.

Miss. R. Civ. P. 25(a).

¶64.    The comment to Rule 25 further states: "*Rule 25 presupposes that substitution is for someone who was already a party to a pending action; substitution is not possible if one who was named as a party in fact died before the commencement of the action. See **Mizukami v. Buras**, 419 F.2d 1319 (5th Cir. 1969).*" Miss. R. Civ. P. 25, cmt. (emphasis original). However, the "not possible" language is misleading, as *Mizukami* merely said Rule 25 is not available in such a situation. In *Mizukami*, which was a case from the U.S. District Court for the Eastern District of Louisiana, the Fifth Circuit Court of Appeals said: "However, as the district court noted, *the rule* contemplates substitution for someone who had been made a party before his death. It *is not available* to the appellants in the present case since Buras predeceased the filing of the action." *Id*. at 1320 (emphasis added). *Mizukami* relies on *Chorney v. Callahan*, 135 F. Supp. 35 (D. Mass. 1955). Both *Mizukami* and *Chorney* involved attempts to substitute the heirs of a defendant under Federal Rule 25. The issue regarding substitution of the heir of a plaintiff was later addressed by the United States Court of Appeals for the Tenth Circuit.

¶65.    In *Esposito v. United States*, 368 F. 3d 1271 (10th Cir. 2004), a decedent was named as a plaintiff in a wrongful-death action, which was dismissed by the Kansas district court for lack of subject-matter jurisdiction. *Id*. at 1272. The Tenth Circuit Court of Appeals reversed the district court, finding substitution of the decedent's wife proper under the real-party-in-

24

interest provision of Federal Rule 17. *Esposito*, 368 F. 3d at 1277-78; Fed. R. Civ. P. 17.

Specifically, the Court said:

> *Mizukami v. Buras*, 419 F. 2d 1319 (5th Cir. 1969) (per curiam), also frequently cited in this context, is not on point here either. That case dealt with an attempt to substitute the heirs of a *defendant* pursuant to Fed. R. Civ. P. 25, rather than the heirs of a plaintiff under Rule 17(a). The same is true of *Moul v. Pace*, 261 F. Supp. 616 (D. Md. 1966). We find none of these cases persuasive on the issue confronting us here.
>
> We do, however, find support in the federal rules for permitting substitution notwithstanding Mr. Esposito's lack of capacity at the time the suit was filed. As the district court pointed out, nothing in Rule 17(a) requires that the original plaintiff have capacity to sue. The fact is, Rule 17(a) does more than merely provide a relation back principle. It provides that substitution "shall have the *same effect as if* the action had been commenced in the name of the real party in interest. Fed. R. Civ. P. 17(a) (emphasis added). Rule 17(a) is designed to prevent forfeitures, and as such must be given broad application. *See* Fed. R. Civ. P. 17 advisory committee's notes (1996 Amendment) (stating Rule 17(a) is "intended to insure against forfeiture and injustice" by codifying "in broad terms" prior law permitting substitution notwithstanding running of limitations statute). We conclude that Mr. Esposito's lack of capacity at the time the suit was filed does not prevent the substitution from relating back to the date the suit was filed under Rule 17(a).

*Esposito*, 368 F. 3d at 1277-78 (emphasis original).

¶66. In finding the substitution of the wife for the decedent-plaintiff proper under Rule 17(a), the court considered "whether the plaintiff engaged in deliberate tactical maneuvering (i.e. whether his mistake was "honest"), and on whether the defendant was prejudiced thereby." *Id*. at 1276. The court found that filing the action in the name of the deceased plaintiff was an honest, understandable mistake. *Id*. The court concluded that "Mr. Esposito's lack of capacity at the time the suit was filed does not prevent the substitution from relating back to the date the suit was filed under Rule 17(a)." *Id*. at 1278. In the instant case,

there is no evidence that the plaintiff engaged in "deliberate tactical maneuvering" by filing the action in the name of Lonnie Pittman or that Trane was prejudiced thereby.

¶67.   Mississippi's real-party-in-interest rule contains the same language discussed in *Esposito*.  Rule 17(a) of the Mississippi Rules of Civil Procedure states:

> Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his representative capacity without joining with him the party for whose benefit the action is brought.  No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Miss. R. Civ. P. 17(a).  The comment to Rule 17 also states, in relevant part:

> *The provision that no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed, after the objection has been raised, for ratification, joinder, or substitution, is added simply in the interests of justice.*

Miss. R. Civ. P. 17, cmt. (emphasis original).

¶68.   Trane asserts in the Appellant's Brief that:

> Where the limits of substitution have been specifically defined, as here with regard to Rule 25(a)(1), it would be completely anomalous to hold, as Pittman's counsel suggested, that the generalized provisions of Rule 17 could somehow trump or override the specific prohibition recognized by Rule 25(a)(1).  The most basic principle regarding the interpretation of statutes and rules is that the more specific rule governs the more general provision.

Yet Trane also admits repeatedly that Rule 25(a) is not applicable in a  situation where the party predeceased the filing of the action.  Trane is correct that Rule 25(a) is not applicable.

*See Mizukami*, 419 F. 2d 1319.  However, I disagree with Trane's contradictory argument and

26

the majority's finding that Rule 17 is not applicable and could not authorize a proper substitution. The language in *Esposito*, Rule 17(a), and the accompanying comment, as set out above, clearly allow the substitution of the real party in interest where a party has predeceased the filing.

¶69. The majority disagrees with the holding of *Esposito* and finds that substitution is not proper under Rule 17. In doing so, the majority relies on various cases from other jurisdictions for the proposition that an action filed in the name of a deceased person or nonexistent entity is a nullity. However, most of the cases cited by the majority are nonbinding authority decided prior to *Esposito*, and all are easily distinguished.

¶70. The majority cites *Humphreys v. Irvine*, 14 Miss. 205, 205 (Miss. Err. & App. 1846), for the following: "In its early days, this Court held that a dead person cannot institute a suit." (Maj. Op. at ¶ 16). However, in *Humphreys*, which was decided prior to the applicable caselaw and rule discussed herein, the trial court excluded evidence that the plaintiff was deceased at the time of the commencement of the suit. *Humphreys*, 14 Miss. at 205. After a jury verdict and judgment in favor of the deceased plaintiff, the defendants appealed. The High Court of Errors and Appeals of Mississippi held that:

> A *judgment* for or against a dead man is *usually* a nullity. Our *statute* directs that the death of the nominal plaintiff during the pendency of the suit, shall not cause its abatement. . . . This constitutes perhaps the only exception. But this cannot be construed to authorize the commencement of a suit, in the name of a person no longer in existence. It matters not at what time the fact of the death of a party is made known to the court; nor in what form. The objection rises above the mere technical rules of pleading, and goes to the right of the court to proceed. It stops the cause at whatever stage it may be, whenever made known to the court.

27

The exclusion of the testimony was therefore erroneous. If the fact is made out to the satisfaction of the court, the effect must be an abatement of the suit, as it will show it was wrongly brought at its inception.

*Id.* at 205 (emphasis added). ***Humphreys*** involved the exclusion of evidence in a case involving a single plaintiff. Further, ***Humphreys*** did not involve the substitution or attempted substitution of a real party in interest, but rather involved the exclusion during trial of evidence that the plaintiff was dead at the time the suit was filed. Moreover, to reiterate, ***Humphreys*** spoke of a judgment for or against a dead person usually being a nullity. That is not the case here. Therefore, ***Humphreys***, which was decided prior to ***Esposito*** and the adoption of Rule 17, is not applicable.

¶71.    The majority then cites ***Collins v. General Electric Company***, 123 So. 2d 609, 613 (Miss. 1960), as recognizing but "choosing not to apply" the "general rule" found in the following:

> The appellants rely upon the rule that in every action there must be a real plaintiff who is a person in law and who is possessed of a legal entity and capacity to sue. We recognize this rule. In 67 C.J.S. Parties § 4, p. 896, appears the following:
>
> "In every action there must be a real plaintiff who is a person in law and is possessed of a legal entity or existence as a natural, artificial, or quasi-artificial person, and a suit brought in the name of that which is not a legal entity is a mere nullity."
>
> We think, however, that the facts of this case do not warrant the application of the aforesaid rule.

***Collins***, 123 So. 2d at 833. (Maj. Op. at ¶ 17). The majority acknowledges that there are times that the "general rule" does not apply. However, ***Collins*** was decided prior to ***Esposito*** and is not applicable.

28

¶72.    In *Illinois Central Railroad Company v. Broussard*, 19 So. 3d 821 (Miss. 2009), the

trial court dismissed the action after being notified that the employee was deceased at the time

of filing, but denied the railroad's request for sanctions against counsel for Broussard. *Id*. at

823  The railroad appealed the denial of sanctions.  This Court affirmed, finding that the trial

court did not abuse its discretion in denying an award of attorneys' fees and expenses. *Id*. at

824.  This case is not applicable.

¶73.    The majority cites *Adelsberger v. United States*, 58 Fed. Cl. 616, 617 (Fed. Cl. 2003),

for the proposition that an "action brought in the name of a deceased individual [was] declared

null." *Adelsberger* is a Fair Labor Standards Act case from the United States Court of Federal

Claims, which has separate rules.  Further, *Adelsberger*, which relies on the *Mizukami*

decision discussed previously herein, was decided prior to *Esposito*.  Moreover, the

*Adelsberger* court found that, under the applicable Kansas law, the widow of the deceased

lacked the representative capacity to sue on behalf of her husband's estate. *Id*. at 619.

Therefore, this case is not applicable.

¶74.    The majority next cites *Banakus v. United Aircraft Corp.*, 290 F. Supp. 259, 260

(S.D.N.Y. 1968), for the proposition that "personal injury suit brought in the name of

deceased person [was] treated as a nullity."  However, the majority fails to acknowledge that

*Banakus*, a diversity suit for personal injuries, was decided prior to and subsequently was

distinguished by *Esposito*.  Specifically, the *Esposito* court said:

> *Banakus v. United Aircraft Corp.*, 290 F. Supp. 259 (S.D.N.Y. 1968), is the
> case most often cited for the "nullity" theory.  In that case, the district court
> denied motions by the decedent's administratrix (1) to substitute herself for the
> decedent in his suit for personal injuries and (2) to add a claim for wrongful
> death. *Id*. at 260.  The court noted that because the decedent had died thirty-

five minutes before his attorney filed his action seeking damages for personal injury, his suit was a nullity. ***Id***. It therefore could not be revived by substituting parties and amending the complaint to add a claim for wrongful death. ***Id***.

***Banakus*** involved a particular factual situation that is not present here. The decedent's original complaint in ***Banakus*** was for personal injury only and did not include a cause of action for wrongful death. The court was not faced with possible forfeiture of a wrongful death claim; it specifically stated that its holding was without prejudice to the right of the administratrix to institute a separate action for wrongful death. ***Id***. The essential point of ***Banakus*** is that the administratrix should not have attempted to revive an expired lawsuit for personal injuries by injecting a new wrongful death claim; instead, she should have filed her claim as a separate action. Because ***Banakus*** relied heavily on the administratrix's attempt to obtain amendment as well as substitution, and did not address the forfeiture avoidance principles of Rule 17(a), we do not find it persuasive on the substitution issue in this case.

***Esposito***, 368 F.3d 1271 at 1277. The instant case did not involve an attempt to revive an expired personal-injury action by injecting a wrongful-death claim. As stated previously herein, the original complaint included a claim for wrongful death. Therefore, ***Banakus*** is not applicable.

¶75. The majority cites ***Black Canyon Citizens Coalition, Inc. v. Board of County Commissioners of Montrose County***, 80 P.3d 932, 933-35 (Colo. App. 2003), for the proposition that "suit filed in the name of a nonexistent corporation [was] deemed void ab initio." In ***Black Canyon***, which was decided prior to ***Esposito***, the Colorado Court of Appeals held that a nonexistent corporation lacked capacity to file a complaint, and that its attempt to cure the defect after the expiration of a thirty-day period specified by Rule 106(a)(4) of the Colorado Rules of Civil Procedure failed. ***Black Canyon***, 80 P.3d at 935. Therefore, ***Black Canyon*** is dissimilar factually and involves the application of a specific Colorado rule not at issue here. The Colorado court acknowledged that courts applying

30

Colorado Rule of Civil Procedure 17 had not yet addressed the question of "whether a nonexistent person or entity can have either the requisite capacity or interest to bring an action." *Black Canyon*, 80 P.3d at 934-35. The court said that it found no compelling reason to reach a result contrary to Rule 25 and that it was "persuaded by the combination of § 7-122-103, *Bowers Building [v. Altura Glass Co.*, 694 P.2d 875 (Colo. App. 1984)], and the jurisprudence applying Fed. R. Civ. P. 25, that an action filed by a nonexistent person or entity is a nullity." As stated herein, the application of Rule 17 subsequently was addressed in *Esposito*. Further, the Colorado Court of Appeals later disagreed with and declined to follow *Black Canyon*. *See Ashton Properties, LTD v. Overton*, 107 P.3d 1014, 1017 (Colo. 2004), and *Currier v. Sutherland*, 215 P.3d 1155, 1160-61 (Colo. 2008). Therefore, *Black Canyon* is not applicable.

¶76.    The majority then cites *Gregory v. DiCenzo*, 713 A.2d 772, 775 (R.I. 1998), for the proposition that a "complaint commenced in deceased person's name [was] deemed a nullity." However, in *Gregory*, which was decided prior to *Esposito*, the court found that the appropriate procedure to be utilized in circumstances in which a complaint is brought in the name of a deceased person was found in a Rhode Island statute, rather than in Rule 17 or 25. The case before us involves no such statute. Therefore, *Gregory* is not applicable.

¶77.    The majority next cites *Matthews v. Cleveland*, 284 S.E.2d 634, 635-36 (Ga. 1981), for the proposition that a "deceased person cannot commence an action." *Matthews* is a Georgia Court of Appeals garnishment case interpreting the application of a Georgia statute and was decided before *Esposito*. Therefore, this case is not applicable.

31

¶78. The majority cites *Levering v. Riverside Methodist Hospital*, 2 Ohio App. 3d 157, 159, 441 N.E.2d 290, 291 (Ohio App. 1981), for the proposition that a "complaint [was] declared a nullity where [the] plaintiff died prior to its filing." *Levering*, which was decided prior to *Esposito*, involved Ohio court rules regarding the commencement of an action, amendment of pleadings and the Ohio version of Rule 25, but did not address the application of any rule similar to Rule 17 regarding the substitution of a real party in interest. Therefore, *Levering* is not applicable.

¶79. The majority also takes issue with the holding in *Esposito*, which is factually on point, by attempting to separate "capacity to sue" and "legal existence" of a party in such a manner as to somehow distinguish *Esposito*. (Maj. Op. at ¶ 25). In doing so, the majority misapprehends *Esposito*, Rule 17, Rule 9, and various lower court cases decided prior to *Esposito*. The majority states: "*Esposito* correctly notes that nothing in Rule 17(a) requires that the original plaintiff have the capacity to sue. *Id*. at 1277. Yet capacity is not really the issue in a case like the one before us." (Maj. Op. at ¶ 25). While the majority is correct that such a statement is made in *Esposito* regarding Federal Rule of Civil Procedure 17, the *Esposito* court also said that issues of capacity are determined by the law of the individual's domicile. *Esposito*, 368 F.3d at 1273. The very title of Mississippi's Rule 17 is "Parties Plaintiff and Defendant; Capacity." Miss. R. Civ. P. 17. Further, the comment to Mississippi Rule of Civil Procedure 17 states: "*Rule 17 prescribes the general requirements that must be satisfied regarding the plaintiff's interest in the subject matter of the proceeding and each litigant's capacity either to sue or be sued*." Miss. R. Civ. P. 17 cmt. (emphasis original).

32

¶80.    Moreover, Mississippi Rule of Civil Procedure 9(a) treats capacity to sue and legal existence interchangeably.  Specifically, Rule 9(a) states: "The capacity in which one sues or is sued must be stated in one's initial pleading."  The comment to Rule 9 states, in relevant part:

> *Rule 9(a) is the same as was required by prior Mississippi procedure.  See V. Griffith, Mississippi Chancery Practice, § 164 (2d ed. 1950).  A party desiring to raise an issue as to the legal existence, capacity, or authority of a party will be required to do so by specific negative averment.*

Miss. R. Civ. P. 9 cmt. (emphasis original).

¶81.    The majority, which states that capacity is not the issue in this case, cites *Glickstein v. Sun Bank/Miami, N.A.*, 922 F.2d 666, 670 (11th Circ. 1991), for an explanation that "'capacity to sue' relates to a party's right to litigate."  (Maj. Op. at ¶ 25).  *Glickstein* involved an action in an estate case where Glickstein had not yet been appointed the personal representative of the estate at the time of the filing.  The court in *Glickstein* compared standing to capacity to sue, finding that "[i]t is clear that the Lilly Glickstein estate has 'standing' to bring this action." *Id*. 670.  The court further said that the "question in this case is whether Howard Glickstein [who had not yet been appointed the personal representative of the estate at the time the suit was filed] is able to bring this case on behalf of the estate.  This is not a question of standing; rather, this issue involves the question of whether Glickstein has the capacity to bring this action on behalf of the estate."  Not only did the court

find that Glickstein had capacity, but it held that Glickstein's appointment as representative would relate back to the time at which the suit was filed. *Id*. at 668.[3]

¶82.   The majority also cites the pre-*Esposito* case of *Iowa Coal Mining Co., Inc. v. Monroe County*, 555 N.W.2d 418, 428 (Iowa 1996), for distinguishing the concepts of capacity to sue and legal existence. The majority then says, "Our concern, rather, is a distinct but closely related concept: legal existence. *See Iowa Coal*, 555 N.W.2d at 428 (noting that capacity to sue is distinct but closely allied to legal existence) (quoting 59 Am. Jur. 2d *Parties* §24, at 410)." (Maj. Op. at ¶ 25). However, *Iowa Coal*, which is a case involving a zoning ordinance from the Iowa Supreme Court, does not address the legal existence of a party, but rather discusses the legal existence of a cause of action. *Id*. at 428. Also, *Iowa Coal* involved standing to bring suit, not the substitution of a real party in interest. *Id*. In discussing whether Iowa Coal had capacity to sue, the court said:

> Capacity to sue is seen as distinct from, although closely allied to, legal existence, or the quality of being a person in law, and the possession of the requisite interest to support an action, or "standing," to sue. Capacity relates to a party's personal or official right to litigate the issues presented by the pleadings. Want of capacity to sue has reference, not to the existence of a plaintiff, but to legal disability, such as infancy, mental incompetence, and the like, which deprives a party of the right to come into court. Lack of capacity merely deprives a party of the right to come into court. *It does not go to the existence of a cause of action*.

*Id*. at 428 (emphasis original).

¶83.   The court further said:

---

[3] *Glickstein* was abrogated by *Saxton v. ACF Industries, Inc.,* 254 F.3d 959 (11th Cir. 2001), which found that Federal Rule of Civil Procedure 15(c)(1) allows federal courts sitting in diversity to apply relation-back rules of state law.

The County's challenge is not one of lack of capacity to sue. The County is not asserting that Iowa Coal had a legal disability depriving it of the right to come into court. Iowa Coal is a legal entity and ostensibly had rights under the leases and amendments as an assignee, rights it claims were allegedly affected by the County's actions.

A cause of action, on the other hand, is defined by our court as

the act on the part of the defendant which gives the plaintiff his "cause of complaint." That is, there must be [a] legal right in [the] plaintiff, a corresponding duty on the part of the defendant and an attendant breach of that duty with resultant harm to plaintiff. . . .

*Giltner v. Stark*, 252 N.W.2d 743, 745 (Iowa 1977) (citations omitted). Of the three concepts – subject matter jurisdiction, capacity to sue, and cause of action – the concept concerning cause of action is the only one that could conceivably fit the facts here.

The County is really arguing that Iowa Coal had no cause of action. The County's argument is that Iowa Coal had no right to mine and landfill under the leases when damages arose and these proceedings were instituted. The right to mine and landfill necessarily forms the basis for any suit Iowa Coal may have had against the County.

*Iowa Coal*, 555 N.W.2d at 429.

¶84. For these reasons, this case is not applicable.

¶85. The majority again cites *Adelsberger*, 58 Fed. Cl. at 617, for the proposition that a "legal existence is a basic threshold; it serves as a prerequisite to having capacity to sue." (Maj. Op. at ¶ 25). *Adelsberger* previously has been discussed herein.

¶86. The majority then decides that, rather than the legal existence of the plaintiff, i.e., "that the individual suing is alive," the issue is actually the legal existence of the *action.* (Maj. Op. at ¶¶ 25-26) (emphasis original). The majority states that Rule 17(a) not only presupposes "that the plaintiff filing suit legally exists" but also "takes for granted or presumes that a valid

35

'action' exists." (Maj. Op. at ¶ 26). The majority cites ***Matthews v. Cleveland***, 284 S.E.2d 634, 635-36 (Ga. 1981), and ***Gregory v. DiCenzo***, 713 A.2d 772, 773 (R.I. 1998), for the proposition that "no 'action' exists where the original complaint is filed by a dead person.'" (Maj. Op. at ¶ 26). As stated previously herein, ***Matthews*** is a Georgia Court of Appeals garnishment case interpreting the application of a Georgia statute and was decided before ***Esposito***. Therefore, this case is not applicable. However, it is worth mentioning that ***Matthews*** discusses the substitution of a plaintiff "having capacity to sue" for a plaintiff who is dead. *Id*. at 636. The majority of this Court says capacity to sue is not the issue. ***Gregory*** has been distinguished previously herein. However, because the majority misapprehends ***Gregory*** a second time, I will briefly readdress this case. The majority's suggestion that ***Gregory*** holds that "no 'action' exists where the original complaint is filed by a dead person'" is erroneous. (Maj. Op. at ¶ 26). The Court in ***Gregory*** found that Rule 25 was not applicable and that "a valid action did not commence within one year of the appointment of the executor as set forth in § 9-1-21." ***Gregory***, 713 A.2d at 775.

¶87.    Further, other courts have addressed this issue, finding that such an issue of capacity is not an incurable defect and that substitution is proper. In ***Advanced Magnetics, Inc. v. Bayfront Partners, Inc.***, 106 F.3d 11 (2nd Cir. 1997), the U.S. Court of Appeals for the Second Circuit said that: "A Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants." *Id*. at 20. *See also* ***Cibran Enterprises, Inc., v. BP Products of North America, Inc.***, 365 F. Supp. 2d 1241, 1251 (S.D. Fla. 2005).

¶88.    In *Currier v. Sutherland*, 215 P.3d 1155 (Colo. App. 2008), the Colorado Court of

Appeals, which the majority relies on as stated previously herein, said:

> Nationally, there remains a split of authority as to whether naming a
> non-existent defendant is an issue of capacity or subject-matter jurisdiction.
> But, the modern trend is consistent with *Ashton* and *SMLL*. According to one
> commentator:
>
> > Some early decisions suggested that a defect in capacity deprives
> > the court of subject matter jurisdiction, since a real case or
> > controversy does not exist when one of the parties is incapable of
> > suing or being sued, although more recent authority has rejected
> > that characterization. To treat capacity problems as subject
> > matter jurisdiction defects seems to exaggerated their
> > significance. . . .
>
> 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice
> and Procedure* § 1559 (2d ed. 1990) (footnotes omitted).
>
> Thus, there is a significant body of more recent authority holding in the
> context of suits involving decedents' estates that naming a non-existent
> defendant does not implicate a court's subject matter jurisdiction. *See Vorhees*,
> 153 P.3d at 1232-33 (noting confusion over the questions of capacity and
> subject matter jurisdiction, Kansas court concluded that although the named
> defendant was not a legal entity and did not have the capacity to be sued, the
> trial court's subject jurisdiction was not implicated); *Austin Nursing Ctr., Inc.
> v. Lovato*, 171 S.W.3d 845, 849, 853 (Tex. 2005) (noting the difference
> between capacity and subject matter jurisdiction in context of suit involving
> estate not formally opened, and noting that when the original petition named
> only the estate itself, the defect was in capacity and an amended petition filed
> against the representative was not barred (citing *Price v. Estate of Anderson*,
> 522 S.W.2d 690, 692 (Tex. 1975)) ); see also *Hamilton v. Blackman*, 915 P.2d
> 1210, 1218 (Alaska 1996) (collecting cases and stating: "We thus agree with
> the federal courts and those state courts holding similarly that amendments
> adding the representatives of the estates of deceased persons as defendants may
> relate back to the date of the original pleadings, even if the original pleading
> erroneously named only the decedent as the defendant."); *Muhammed v.
> Welch*, 675 N.W.2d 402, 412 (N.D. 2004) (noting, with citation, that the
> "nullity theory" has recently fallen into disfavor, and offering an alternative
> based on fulfilling requirements of Rule 15(c)).

Thus, we agree with Ashton and SMLL that a party's capacity to sue or be sued does not affect the court's subject matter jurisdiction, and we also agree with the reasoning of those courts in other jurisdictions that have concluded that naming a non-existent entity as a defendant is an issue not of subject matter jurisdiction, but of capacity.

Similarly, because we have concluded that naming a defendant without capacity is not an incurable defect of subject matter jurisdiction, we also disagree with plaintiffs' argument that the trial court erred by exercising its jurisdiction to allow an amendment to the original complaint to substitute a party with capacity. See, e.g., *Benton v. Adams*, 56 P.3d 81, 84 (Colo. 2002) (amendment permitted when change in capacity); see also *Doe v. Heitler*, 26 P.3d 539, 544-45 (Colo. App. 2001) (where court dismissed a complaint for lack of subject matter jurisdiction when it failed to name a party plaintiff, instead using "John Doe," it was error for court not to allow amendment of complaint).

*Currier*, 215 P.3d at 1160-61.

¶89. As discussed previously herein, Rule 17(a) plainly states that:

No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder or substitution shall have the same effect as if the action had been *commenced* in the name of the real party in interest.

Miss. R. Civ. P. 17(a) (emphasis added). The rule clearly speaks of the commencement of the action. If the action is commenced by someone other than the real party in interest, the action will not be dismissed until a reasonable time for substitution has been allowed. A deceased individual clearly would fall into the category of someone other than the real party in interest. For these reasons, I disagree with the erroneous finding of the majority.

¶90. The majority further finds that, even if substitution were proper, the original complaint was a nullity and the amended complaint was not filed within the applicable statute of limitations. The majority cites *Tolliver v. Mladineo*, 987 So. 2d 989 (Miss. Ct. App. 2007),

38

for the proposition that tolling cannot occur where a filing is void and a jurisdictional nullity. *Tolliver* is not binding authority on this Court and can also be distinguished.

¶91.    In *Tolliver*, the brother of a decedent, who was survived by a husband and children, filed a wrongful-death lawsuit against defendant doctors. *Id*. at 992. The doctors filed a motion to dismiss. *Id*. The plaintiff's motion to substitute decedent's son was granted pursuant to Rule 15 of the Mississippi Rules of Civil Procedure. *Id*. However, counsel for plaintiff later failed to appear for a mandatory docket call, and the case was dismissed for failure to prosecute under Rule 41(b) of the Mississippi Rules of Civil Procedure. *Id*. The plaintiff appealed the dismissal, and the defendants cross-appealed. *Id*. at 992-93. The defendants asserted that substitution was improper under Rule 15 and that the amended complaint was filed after the expiration of the statute of limitations. *Id*. at 993. The Court of Appeals found that the decedent's brother lacked standing to bring the lawsuit and that the amended complaint could not relate back to the original filing. *Id*. at 995-96, 999. Therefore, the court treated the amended complaint as an original filing and found that it was barred by the applicable statute of limitations. *Id*. at 996, 999. The majority of the Court of Appeals failed to address the application of Rule 17 in *Tolliver*. *Id*. at 1000.

¶92.    The majority ignores the very language of Rule 17(a), as quoted above, which states that "substitution shall have the same effect as if the action had been commenced in the name of the real party in interest." Miss. R. Civ. P. 17(a). "Commenced" clearly means when the action was filed. Therefore, Mary "steps into the shoes" of Lonnie at the time the action was filed. *Kirk v. Pope*, 973 So. 2d 981, 990 (Miss. 2007). Further, other courts have said that substitution under Rule 17(a) relates back to the filing of the original complaint. *See*

39

***Advanced Magnetics, Inc.***, 106 F.3d at 20-21; and ***Glickstein***, 922 F.2d at 668. Therefore, the substitution of Mary Pittman related back to the original filing and was not barred by the applicable statute of limitations.

¶93. Trane states that the applicable statute of limitations expired March 11, 2004, which was three years after Lonnie Pittman's death on March 11, 2001. The suggestion of death was not filed until April 16, 2004, which was after the expiration of the statute of limitations. Further, the record reflects no opposition to the motion for substitution of Mary Pittman. Also, Nettles was not severed from the action until after the substitution. The "interests of justice" are not served by wrongfully denying substitution which is clearly proper under Rule 17(a), ***Esposito,*** and the other authority cited herein. Miss. R. Civ. P. 17(a); ***Esposito***, 368 F. 3d 1271. Because Trane has failed to demonstrate that there is no genuine issue of material fact, I would affirm the trial court. Therefore, I respectfully dissent.

**KITCHENS AND CHANDLER, JJ., JOIN THIS OPINION.**